A. J. HIRSCHL *et al.*, Appellees, v. J. H. CLARK, Trustee, Appellant.

**Mutual Benefit Insurance : ASSIGNMENT.** Where a contract for insurance in a mutual benefit association authorizes a change in the beneficiary upon the direction of the insured, and neither the consent of the association nor the surrender of the benefit certificate is required either by the contract for insurance or by the constitution or by-laws of the association, a written instrument duly executed by the insured, and forwarded, at his instance, to the association by mail, reciting that he thereby surrenders the benefit certificate theretofore issued to him, and directing that a new certificate be issued to him, payable to a different beneficiary, will be effectual to change the beneficiary under said certificate, and will be binding upon the association after notice thereof, without the surrender of the certificate in fact, although it was the practice in the business of said association to require the surrender of benefit certificates in such cases before issuing new ones, and the association had neither issued a new certificate as directe 1, nor assented to the change of beneficiaries, before the death of the assured. (*Distinguishing Stephenson v. Stephenson*, 64 Iowa, 534.)

*Appeal from Scott District Court.*—HON. ANDREW HOWAT, Judge.

MONDAY, OCTOBER 20. 1890.

THIS is an equitable proceeding, the object of which is to determine the rights of the parties to the proceeds of a benefit certificate, issued by the Iowa Knights of Pythias Insurance Association upon the life of William Burrows, deceased. The plaintiff claims the said proceeds as trustee for the mother and other relatives of the deceased, and the defendant, Mary Burrows, claims that she is the lawful beneficiary of the fund, and that it should be paid to her. The insurance association made no contest as to the validity of the certificate, and, by agreement of all parties, the money due from the

association was paid to A. J. Hirschl, Esq., and by proper pleadings Clark, the trustee, and said Mary Burrows presented their respective claims to said proceeds. The district court held that Mary Burrows was the lawful beneficiary, and ordered the proceeds to be paid to her. J. H. Clark, trustee, appeals.

*C. W. Haller* and *G. H. Koch*, for appellant.

*Bills & Haas*, for appellees.

ROTHROCK, C. J.—I. The insurance was effected in October, 1882. The contract of insurance was made upon an application, of which the following is a copy :

" I, the undersigned, desire to become a member of the Iowa Knights of Pythias Insurance Association, and hereby certify that I will true answers make to all questions, and, to the best of my knowledge and belief, will not conceal or omit to state anything regarding my health, past or present, affecting the expectancy of my life, and agree that any untrue or fraudulent statements made in this application, or to the medical examiner, or any concealment of facts by me made, or my suspension from my lodge, or voluntarily severing my connection with this association, shall forfeit all right, claim and interest, and all right, claim and interest of my heirs, executors, administrators and assigns, in and to all benefits and privileges of the association. I direct that all benefit to which I may be entitled from the association be paid to Mary Burrows, related to me as wife, subject to such future disposal of the benefits as I may hereafter direct.

    " [ Signed.]        WILLIAM BURROWS,
            " [ Signature of applicant.]"

The benefit certificate issued by the association was in these words :

" No. 142. Duplicate. $2,000. Iowa Knights of Pythias Insurance Association. Benefit Certificate. This certifies that Knight William Burrows is a member

of the Iowa Knights of Pythias Insurance Association, located at Marshalltown, Iowa, and upon condition that the statements made by him in his application for membership in said association, and the statements certified by him to the medical examiner, were true at the time of making thereof, and that they be made a part of this contract, and upon the further condition that the said member complies in the future with the laws, rules and regulations now enacted, or which may hereafter be enacted, to govern said association, then the said Iowa Knights of Pythias Insurance Association hereby promises and binds itself to pay out of the funds of said association to Mary Burrows [wife] a sum not exceeding two thousand dollars, in accordance with, and under the provisions of, the law governing said association, upon satisfactory evidence of the death of said member, and upon the surrender of this certificate : provided that said member is in good standing in said association at time of death.     In witness whereof, the Iowa Knights of Pythias Insurance Association has hereunto affixed its seal, and caused this certificate to be signed by its president, and attested and recorded by its secretary at Marshalltown, Iowa, this seventh day of October, A. D. 1882.

"(Signed.)                    BYRON A. BEESON,
    "E. H. HIBBEN,                        President.
"[Seal.]          Secretary."

William Burrows died at the city of Davenport, in this state, on the twenty-sixth day of April, 1888.    On the twenty-first day of said month, he executed an instrument in writing, in these words :

"I hereby surrender the benefit certificate issued to me, William Burrows, by the Iowa Knights of Pythias Insurance Association, and direct a new one to be issued to me, payable five hundred dollars ($500) to Elizabeth Burrows, related to me as mother, and five hundred dollars ($500) to my sister, Mrs. Gill, the balance to pay my legal debts ; and the balance to John Sandry, wife, two children and nephew, Frank McCoon, share

and share alike. All in trust to Joseph H. Clark to be carried out as directed.

"Witness my hand and seal, April 21, 1888.

"[ Signed.]　　　　WILLIAM BURROWS.

"Signed by WILLIAM BURROWS in presence of

"D. C. GARRETT,

"C. O. ANDERSON,

"E. L. RAFF."

There is no controversy about the execution of this paper, and, although it appears that Burrows was quite feeble at the time he signed the same, there is no evidence that it was not his voluntary act, or that those who were present and prepared the paper, and witnessed the signature, used any influence or persuasion to induce him to sign it. They were present at his request for the purpose of aiding him in carrying out his desire to change the beneficiary in the certificate. One of said persons testified as a witness as follows : "I got home that morning from a three weeks' absence. Mr. Burrows sent for me, and said he wanted to change his policy to his mother and sisters, and wanted to know whether or not I could do anything for him. He said he had one policy he expected to leave to his wife, and the other policy he would rather have changed. He said his mother and sisters were as much entitled to it as his wife on account of the treatment he had had lately. He said he was afraid to stay in the house after the policy was changed. I said I did not know much about it, but would go and see Clark. I went to Clark, and we went to Heinz & Hirschl to see about having the policy changed." Another testified as follows : " I was summoned to the sick bed of William Burrows, and he urged me to assist in making this change ; that he had long intended to make the change, but his wife had prevented him from doing it, and he wanted me to help him with it, which I promised I would do, and, when the paper was brought, there were some minor changes to be made."

It further appears in evidence that the said paper was placed in the mail at Davenport, on the evening of the twenty-third day of April, 1889, inclosed in an

envelope, addressed to the said insurance association at
Marshalltown. This is not absolutely certain; but it
was mailed at some time between the day of its date and
April 26. We think the preponderance of the evidence
shows that it was mailed on the twenty-third, and that
it was sent in the mail on the evening of that day. And
it appears from the evidence, that a letter mailed at
Davenport in time for the evening mail will, in due
course of transmission, reach Marshalltown at about ten
o'clock the next morning. This conclusion is not incon-
sistent with the testimony of the president and secretary
of the association. They testified that the paper was
not received until the twenty-seventh; but they both
state that for some time previous to that date they had
both been absent. They do not state that the mail
addressed to the association was taken from the post-
office on the twenty-fourth, twenty-fifth and twenty-
sixth of that month. A letter was inclosed with the
paper, of which the following is a copy :

"HEINZ & HIRSCHL,

"April 23, 1888, 202 West Second Street, ⎫
"DAVENPORT, IOWA.        ⎭

"*E. H. Hibben, Esq., Marshalltown, Iowa.*

"DEAR SIR :—We inclose assignment, pertaining to
transfer of benefit certificate issued to Wm. Burrows,
and affidavit in relation thereto. We inclose one dollar
($1), fifty cents being intended for the transfer. You
can return the change in postage stamps. Please make
the change at once, transfer at once, and advise us
accordingly. Yours respectfully."

At the time the instrument by which it was sought
to change the beneficiary was signed by said Burrows,
his wife was in possession of the certificate, and was
requested to surrender it. This she refused to do in the
most positive terms, saying that she would burn it up
and destroy it rather than deliver it up, and that she
would see Clark, the trustee, "in hell, before she would
give him the paper." Immediately after the transac-
tion was completed, the persons who assisted Burrows

in making the transfer removed him to Mercy Hospital, in Davenport, where he remained until he died. It does not appear that deceased left any children surviving him. At the same time that the paper in question came into the hands of the officers of the association at Marshalltown, they also received a notice of the death of Burrows, and no action was taken by the association in regard to a change of the beneficiary. The printed articles of incorporation and laws of the association contained the following, among other provisions: "The association shall furnish each member thereof with a benefit certificate, signed by the president, and duly attested by the secretary, and said certificate shall contain the agreements on the part of the association and member. The fee for changing a benefit certificate shall be fifty (50) cents. They (the board of directors) shall have power to make such rules and regulations for their government, *i. e.*, payment of claims, reception of proof of death, and transaction of general business, as a majority may see fit, not conflicting with these laws." The benefit certificate was a printed form in blank, and on the back of it was printed these words: "I do hereby surrender the within benefit certificate, and direct that a new one be issued to me, payable to —— ——, related to me as —— ——."

II. The foregoing is a statement of the facts necessary to be considered in determining which of the claimants is entitled to the fund in the hands of the trustee. It will be observed that, by the very terms of the benefit certificate, the application is made part of the contract between the insurer and the insured. The obligation of the association was to pay the amount due to the wife of Burrows, subject to such future disposal of the benefits as he might thereafter direct. If the contract contained no other requirement, we think that it is quite plain that this direction to make payment to some one other than Mary Burrows might be made by assignment, or by any direction in writing which would protect the association in making payment of the loss to the person designated by the insured. It is insisted,

however, that, as the certificate requires that it shall be surrendered to the association before payment, and that the member bound himself to comply with the laws, rules and regulations then enacted, or thereafter to be enacted, governing said association, that no transfer was made, because the certificate was not surrendered, and the laws, rules and regulations of the society have not been complied with.

The requirement that the certificate should be surrendered upon payment of the loss must receive a reasonable construction. Suppose it should appear upon the death of a member that the certificate had been lost or destroyed. No one would claim that the insurer could escape payment by reason of the failure to surrender the certificate. And it is to be observed that there is no requirement in the contract that the certificate shall be surrendered in order to effect a change of the beneficiary. It does not even provide that it is necessary to notify the association of the change at the time it is made. By the very terms of the contract, the change of the beneficiary is a mere direction to the association, which it is bound to obey. The "disposal of the benefits" may be made by the mere direction of the insured. This act does not require the assent of the association. It is not a new contract between the insurer and the insured. If the association receives notice of the change in the beneficiary before it has been in any way prejudiced, it would seem that it would be bound to obey the direction. These views appear to us to be founded on sound reason,

We look in vain for any rule or regulation enacted by the association with which Burrows failed to comply. It is true that the blank on the back of the certificate indicates that the manner of conducting the business of the association was to surrender the first certificate, and issue another to the new beneficiary, and the evidence shows that this was the practice of the company. But this was a mere regulation for the convenience of the company, of which its

members had no notice.   It was no part of the constitution or by-laws of the association; and rules or regulations adopted by the officers of the company, in regard to the transaction of business, and which do not enter into the constitution of the company as provisions of its charter or by-laws, are not embraced in the certificate.   They are such rules as fix the rights of members of the company, and are parts of the laws of the institution which are to be regarded as parts of the contract. *Walsh v. Ætna Life Ins. Co.*, 30 Iowa, 133, and authorities there cited.   The case of *Stephenson v. Stephenson*, 64 Iowa, 534, is in no sense in conflict with the views we have expressed.   In that case the by-laws, which were made part of the contract, made specific provision as to the manner of changing the beneficiary. It is there said that "the manner in which this should be done formed a part of the contract of insurance."

We have set out the facts attending the execution of the paper by Burrows, and the time of its reaching the association, with more particularity than may have been necessary.   In our opinion, the fact that Burrows died before the association received the instrument is not a material question.   Under this contract Burrows could have changed the beneficiary by an assignment on the certificate, or by a separate paper, and it was complete, at least so far as Mary Burrows was concerned, when it was delivered to Clark, the trustee. Notice to the insurer of the assignment was not necessary, unless required by the contract of insurance. Bliss on Life Insurance, sec. 333 ; May on Insurance, secs. 388, 396, and authorities cited.   Where a policy is assignable, or where a benefit certificate authorizes a change of beneficiaries, which is the same thing in effect as an assignment, notice of the assignment is not necessary to its validity, unless required by the contract of insurance.   The execution of the instrument by Burrows, directing that the money be paid to his mother and brothers and sisters, operated as an equitable assignment.   The consent of Mary Burrows was not necessary to effect the object.   And she could not defeat

it by refusing to deliver the certificate when it was demanded. She had no vested right in the paper, nor in the insurance. If it had been procured from her by fraud, and a new certificate issued to another beneficiary, she would have had no right to complain. *Brown v. Grand Lodge*, 80 Iowa, 287. The decree of the district court will be REVERSED