MARY L. HOLDEN, Appellant, v. THE MODERN BROTHER-HOOD OF AMERICA. VESTA V. HOLDEN, Intervener, Appellees.

**Benefit insurance:** BENEFICIARY'S INTEREST. The beneficiary in a policy of life insurance acquires no vested interest therein during the life of the insured, but upon his death the party entitled to the benefits acquires such an interest.

**Same:** CHANGE OF BENEFICIARY: ESTOPPEL. An insurance association may stipulate the method and conditions under which a substitution of beneficiaries may be made, which, as a general rule, must be complied with to effect a substitution; but there are exceptions to this rule, as in cases of waiver or estoppel on the part of the association, or where literal compliance with the regulation is beyond the power of the member, or where the member has done all in his power to effect a change but dies before the new certificate issues, in which case a court of equity will treat the certificate as having issued.

In this action the insured did all that was required of him to effect a change of beneficiary except to surrender the original certificate, which the original beneficiary held and refused to deliver, and the association was notified of all these facts. The association admitted liability to some one, asked that all parties be brought into court that such a decree be entered as would fully protect it from double liability.

*Held,* that as the controversy was solely between the claimants of the fund and as the original beneficiary had refused to surrender the original certificate she was in no position to claim that a substitution had not been effected.

*Appeal from Linn District Court.*—HON. MILO P. SMITH, Judge.

WEDNESDAY, JULY 5, 1911.

ACTION by plaintiff as beneficiary named in a mutual benefit certificate in the defendant association issued to plaintiff's husband, Benj. P. Holden. The intervener, who is the mother of Benj. P. Holden, claimed the amount due under the certificate by virtue of an alleged change of beneficiary attempted to be made by him in her favor. There was a verdict for the intervener, and from judgment on such verdict the plaintiff appeals.—*Affirmed.*

*Jamison, Smyth & Hann,* for appellant.

*Grimm & Trewin,* for appellee.

*Barnes & Chamberlain* and *Neville & Greer,* for intervener and appellee.

DEEMER, J.—The certificate of membership in the defendant association issued to Benj. P. Holden as member, naming plaintiff as beneficiary, contained by reference to the by-laws of the association the following stipulation as to change of beneficiary; "Should a member in good standing desire to change his beneficiary or beneficiaries, such member shall deliver to the secretary for the subordinate lodge of which he is a member his benefit certificate, with the surrender clause on the back thereof properly executed, designating therein the change desired, and the name of the person or persons, substituted as beneficiary, or beneficiaries, together with a fee of fifty cents. The execution of said surrender clause shall be in the presence of, and attested by, said subordinate lodge secretary. Provided, however, that if the member be so situated that he can not execute said surrender clause in the presence of said secretary, the signature of the member thereto must be attested by the jurat of some person authorized to administer oaths. Said benefit certificate, with said fee of fifty cents, shall then be sent to the Supreme Secretary, who

shall thereupon issue a new benefit certificate payable to the beneficiary or beneficiares named in said surrender clause. No change of beneficiary shall be effective until the old benefit certificate, and said fee of fifty cents, shall have been delivered to the Supreme Secretary and a new benefit certificate issued during the lifetime of the member. In case a benefit certificate is lost or destroyed, the owner thereof, may, in writing, on a form furnished by the Supreme Secretary, waive all claims thereunder, whereupon a new certificate will be issued upon request to the Supreme Secretary, upon the payment of fifty cents, said new certificate to be endorsed on the face thereof: 'Duplicate Certificate issued in lieu of lost or destroyed certificate.'" There was also a provision as to the disposition of the benefit in case the beneficiary named should die before the death of the member if the member had failed to designate another beneficiary. The certificate in question was at one time in the possession of Benj. P. Holden in his home in Cedar Rapids, and was placed by him in a certain bookcase or secretary. He was subsequently taken ill, and on May 10, 1909, went to the home of his mother, the intervener, at St. Joseph, Mo., where he remained until his death which occurred on July 19th following. In the meantime, on June 11th, plaintiff stored the household goods in Cedar Rapids in order to go to her husband, and while doing so she removed the certificate from the bookcase or secretary and took it to a bank, where she personally left it for safe-keeping. On reaching her husband in St. Joseph, she explained to him the circumstances under which she had placed the certificate in the bank. On July 14th plaintiff's husband made an affidavit before a notary public as to his membership in the Cedar Rapids lodge of the defendant association, stating that the benefit in such certificate was payable to his wife, and reciting that "the said beneficiary certificate is not in his possession nor under his control but that the same is being withheld

from him at this time," and that, in consequence of said detention and withholding of his certificate, "he is unable to deliver same to the secretary of the above named lodge of which he is a member," and that he thereupon makes application for a new certificate, naming Vesta P. Holden, related to him as mother, as substituted beneficiary, canceling and annulling said original benefit certificate. It was further recited in this affidavit that he was unable to travel, and for that reason unable to make oath to said affidavit in the presence of the secretary of the subordinate lodge of which he is a member. The signature to this affidavit purports to be witnessed by two witnesses, and to be subscribed and sworn to before a notary public. This affidavit, accompanied by fifty cents, the fee required for the purpose, was forwarded at the direction of the member to the office of the grand lodge at Mason City by a firm of attorneys at St. Joseph. It was received by the officer of the company on July 17, 1909, and on July 22d the secretary of said grand lodge wrote these attorneys a letter acknowledging the receipt of the affidavit, in which they advised that a duplicate certificate could not be issued, because it was not stated in the affidavit that the certificate had been destroyed. From this letter it appeared that the grand lodge had already been advised of Holden's death, and on the 26th of the same month the secretary wrote to the' same attorneys to the effect that the beneficiary of the certificate had not been changed because the laws of the society were not complied with and inclosed the fifty cents which they had remitted.

Action was instituted by plaintiff against defendant by the filing of a petition in equity asking judgment for the amount of the certificate, and the defendant answered, admitting the membership of Holden, and the issuance of the certificate naming plaintiff as beneficiary, but alleging that Vesta V. Holden claimed some interest in the proceeds thereof under and by virtue' of a written document exe-

cuted by the member under date of July 14th attempting to change the beneficiary, and that defendant, although ready and willing to pay the amount of the certificate to the person to whom the money rightfully belonged, was unable to determine whether plaintiff or Vesta V. Holden was entitled to the whole or any part of the proceeds, and praying for an order of court bringing in as a party the said Vesta V. Holden in order that the defendant's interests might be protected. Thereafter Vesta V. Holden filed her petition of intervention in the action reciting the facts as already above stated, and alleged that prior to July 14, 1909, it was the purpose and intention of Benj. P. Holden to surrender and cancel said certificate and nominate intervener as the new beneficiary to be entitled to his interest in said fund, and for this purpose he demanded of plaintiff, the then beneficiary of said certificate, who was in sole possession thereof, that she return it to him in order that he might surrender it for cancellation; that the plaintiff, wrongfully and for the purpose of preventing said Benj. P. Holden from complying with the by-law requiring the return of the certificate for the purpose of cancellation and the issuance of a new certificate to the said Benj. P. Holden, refused to return the same; that for such reason he was unable to secure possession of the certificate and surrender it to defendant for cancellation; and than Benj. P. Holden was prevented from surrendering the certificate to the defendant for the reasons aforesaid. It is further recited that the only right of action which accrued or could accrue by virtue of the said certificate of Benj. P. Holden to his lawful beneficiary therein was a right of action in equity to compel defendant to levy upon its members the assessment provided for in said certificate, and pay the same to the original beneficiary. Therefore intervener prayed that a decree might be rendered establishing and confirming her right to receive the trust fund which the defendant had already paid into court to be held

by the clerk subject to its order, that the petition of plaintiff be dismissed, and that intervener have judgment for costs and equitable relief. Plaintiff answered this petition of intervention by denying the material allegations thereof with reference to change of beneficiary. Intervener introducd testimony from two witnesses to show that, while plaintiff was in St. Joseph during the last illness of her husband, he requested of her that she return the policy which she had in her possession, that he wanted to pay some of the debts he had incurred, and that plaintiff said in response that she had the policy and was going to keep it. That the exact purport of the testimony may appear, we here quote from the record as follows: One witness testified: "A. He said he wanted that $1,000 policy that she had, and she told him she had it and was going to keep it." Another witness testified in response to a question as follows: "Q. Did you hear a conversation between Benjamin P. Holden and his wife, Mary L. Holden, in reference to his wife surrendering to him a certain policy of insurance held by Mr. Holden in the society known as the Modern Brotherhood of America? A. He asked her for the $1,000 policy, and she told him she had it in her possession and she would not give it up." This testimony was denied by plaintiff, and thus arises the principal question of fact in the case.

While the case was originally brought as in equity and the petition of intervention tenders an equitable issue, the case was for some reason tried to a jury. No point is made regarding the method of trial which is considered controlling, for the principal question in the case is one of law, and the trial was had upon the theory, that no matter whether the action be at law or in equity, intervener has no right of recovery. The theory on which the case was tried will appear from the following instructions, which we copy from the record:

(3) The certificate of insurance, together with the

rules and by-laws of the company constituted the contract of insurance on the life of Benjamin P. Holden. And, as originally written, the plaintiff, Mary L. Holden, was the beneficiary and entitled to recover the amount of insurance, to wit, $1,000. But the assured, Mr. Holden, had the right to change the name of the beneficiary in the manner provided for in the by-laws and have a new policy issued to that effect, without obtaining the consent or even consulting the beneficiary. The evidence shows that all the steps necessary for him to take to effect a change in the beneficiary have been by him taken, except that of returning and surrendering to the company the old certificate. The failure to return the certificate is of itself fatal to the intervener's right to recover, unless the plainitff's act was the cause of such failure to return it.

(4) If you find from a preponderance of the evidence that at the time of making the affidavit on July 14, 1909, the certificate of insurance was not in the possession or under the control of the assured Benjamin P. Holden, but was in the possession, or under the control of his wife, Mary L. Holden, and that prior to said date he requested her to deliver it to him, and that she declined to do so, but withheld it from him, and subsequently he was unable to send it in with the affidavit to the company, then her act in so withholding it from him was wrongful and will defeat her right to the insurance money, and you should find for the intervener. But, if you fail to so find, then your verdict should be for the plaintiff.

These instructions are challenged, and it is stoutly insisted that under the record the verdict should have been for plaintiff.

It is well settled by the authorities that the beneficiary named in a certificate of a fraternal beneficiary association has no vested interest during the life of the member;

1. BENEFIT INSURANCE: beneficiary's interest.

but on the death of such member the person who under the terms of the contract with the association is then entitled to receive the benefits provided for in the certificate does acquire a vested interest therein. *Shuman v. Ancient Order of United*

*Workmen,* 110 Iowa, 642; *Wandell v. Mystic Toilers,* 130 Iowa, 639.

The defendant association had a perfect right in entering into a contract with its members to stipulate the methods and conditions by and under which a substitution of beneficiary could be effected, and, unless such methods and conditions were adopted and complied with, no substitution took place, and plaintiff, unless there be some exceptions to the rule, is entitled to the proceeds of the certificate. "A mere intention on the part of the member to change the beneficiary not acted upon in the manner required by the constitution of the association during the lifetime of the member is ineffectual, and the first beneficiary on the death of the member without the required steps having been taken to effect a change acquired a vested right." *Wandell v. Mystic Toilers, supra.* In *Shumann v. Ancient Order of United Workmen, supra,* it was held that the effort of a member to change the beneficiary in his certificate not made in accordance with the rules of the association regulating the manner in which such changes might be made was ineffectual.

2. SAME: charge of beneficiary: estoppel.

But to the general rules already stated there are some well-defined exceptions which have been recognized in both law and equity, nowhere better stated than by Mr. Justice Brown in *Supreme Conclave v. Cappella* (C. C.), 41 Fed. 1, from which we extract the following: "The rule that the parties must comply with the rules of the society to effect a change of beneficiary is subject to three exceptions, namely: (1) Where the society has waived compliance, or estoppel itself to assert noncompliance. (2) Where it is beyond the power of the member to comply literally with the regulations. (3) If the insured has pursued the course pointed out in the by-laws and has done all in his power to change the beneficiary, but, before the new certificate actually issues he dies, . . . a court of equity

will act as if the new certificate has been issued." These
exceptions have been announced in many cases from other
jurisdictions so numerous that no attempt will be made to
cite them all. The following will be found quite closely
in point: *Marsh v. Legion of Honor,* 149 Mass. 512 (21
N. E. 1070, 4 L. R. A. 382); *Ancient Order of United
Workmen v. Child,* 70 Mich. 163 (38 N. W. 1); *McGowan
v. Foresters,* 104 Wis. 173 (80 N. W. 603); *Isrigg v.
Schooley,* 125 Ind. 94 (25 N. E. 151); *Waldum v. Hom-
stad,* 119 Wis. 312 (96 N. W. 806); *Luhrs v. Luhrs,* 123
N. Y. 367 (25 N. E. 388, 9 L. R. A. 534, 20 Am. St.
Rep. 754); *Lahey v. Lahey,* 174 N. Y. 146 (66 N. E.
670, 61 L. R. A. 791, 95 Am. St. Rep. 554). We have
also recognized these exceptions in some of our previous
decisions. See *Wandell v. Toilers' Assn.,* 130 Iowa, 639;
*Carpenter v. Knapp,* 101 Iowa, 712; *Shuman v. Ancient
Order of United Workmen,* 110 Iowa, 642; *Simcoke v.
Ancient Order of United Workmen,* 84 Iowa, 383; *Hirschl
v. Clark,* 81 Iowa, 200; *Brown v. Ancient Order of United
Workmen,* 80 Iowa, 287. As already observed, the original
defendant, the benefit society, is making no defense to the
suit. It admitted liability to some one and practically
brought the money into court asking that intervener be
brought into the case, and such a decree and order made
as would protect it. We therefore have all the parties in
court, and the benefit society is asking for nothing save
protection from double liability.

The controversy is between the two rival claimants—
the original beneficiary named in the certificate and the
subsequent appointee named by the assured. In such a sit-
uation Justice Brown made the following observations,
which have everywhere been regarded as authoritative:

While the supreme authority may have been justified
in refusing to issue a new certificate without a surrender
of the old one, according to the requirements of the order,
it certainly does not lie in the mouth of Miss Cappella

to set up this failure in a court of equity when she her-self is a cause of it, and the company has admitted its liability by the payment of the money into court. No maxim of the law is founded upon more substantial justice than that which declares that no one shall take advantage of his own wrong. Under the by-laws of the company, the insured had a legal right to change his beneficiary when-ever he pleased; and the consent of the company does not seem to be required, much less that of the beneficiary. Were the nonsurrender of the certificate set up by the com-pany in a common-law action brought by Kratzch, it is possible the court might be compelled to hold that he had failed to establish his title; but, when the company waives this defense, or at least disclaims any interest in the re-sult of the controversy, the objection comes with ill grace from one who is solely responsible for such nonsurrender. A court of equity is seldom embarrassed by technicalities, and will make such decree as the justice of the case mani-festly requires. The cases above cited, which establish the proposition that the failure to take the proper steps to change the designation can only be taken advantage of by the company itself, are equally pertinent to show that it can not be made available by one standing in the relation of Miss Cappella to this fund.

*Supreme Conclave v. Cappella, supra.* This rule has been followed in the other cases. *Vide, Grand Lodge v. Child,* 70 Mich. 163 (38 N. W. 1); *Hall v. Allen,* 75 Miss. 175 (22 South. 4, 65 Am. St. Rep. 601), and note; *Adams v. Grand Lodge,* 105 Cal. 321 (38 Pac. 914, 45 Am. St. Rep. 45); *Jory v. Supreme Council,* 105 Cal. 20 (38 Pac. 524, 26 L. R. A. 733, 45 Am. St. Rep. 17); *Lahey v. Lahey,* 174 N. Y. 146 (66 N. E. 670, 61 L. R. A. 791, 95 Am. St. Rep. 554); *McLaughlin v. McLaughlin,* 104 Cal. 171 (37 Pac. 865, 43 Am. St. Rep. 83); *Nally v. Nally,* 74 Ga. 669 (58 Am. Rep. 458); *Cade v. Head Camp,* 27 Wash. 218 (67 Pac. 603); *Grand Lodge v. Kohler,* 106 Mich. 121 (63 N. W. 897) (this case being closely in point). There is a class of cases holding that the beneficiary can not be changed after the death of the

assured, but this is upon an entirely different principle from the one here involved. The assured did all that he could toward making the change before he died and of this the company was advised before his death. Nothing was left for it to do under the showing made but to issue another certificate to the new appointee, a merely ministerial act, and equity will regard that as done which should have been done and judgment rendered accordingly. We have expressly held that the issuance of a new certificate is unnecessary. *Wood v. American Yeomen,* 148 Iowa, 400. See, also, *Luhrs v. Luhrs, supra; Mut. Life Ins. Co. v. White,* 20 R. I. 457 (40 Atl. 5); *Manning v. United Workmen,* 86 Ky. 136 (5 S. W. 385, 9 Am. St. Rep. 720); *Titsworth v. Titsworth,* 40 Kan. 571 (20 Pac. 213); *Delaney v. Delaney,* 175 Ill. 187 (51 N. E. 961); *Allgemeiner Arbeiter Bund v. Adamson,* 132 Mich. 86 (92 N. W. 786); *Spengler v. Spengler,* 65 N. J. Eq. 176 (55 Atl. 285); *Supreme Council v. Murphy,* 65 N. J. Eq. 60 (55 Atl. 497). Most of the cases last above cited are authorities for the proposition that, when a benefit society pays the money into court upon one of its certificates, it waives all mere technical defenses which it might have set up against either claimant, and leaves the court free to award the fund upon equitable principles. Appellant's counsel argue the case upon the theory that, as between the two adverse claimants to the funds, there was neither waiver nor estoppel pleaded or proved, and that the original beneficiary was entitled to recover. Were there any controversy between either claimant and the benefit society, there might be some basis for this contention. But the case does not depend upon either of these doctrines. It is simply a question as to which of the two rival claimants is in equity entitled to the fund. Upon that proposition the authorities are abundant and sufficient. The instructions given by the trial court are in line with the

views here expressed, and we discover no error for which there should be a reversal.

The judgment must therefore be, and it is, *affirmed*.