LESTER W. ISGRIG, appellant, v. PRUDENTIAL INSURANCE COMPANY OF AMERICA, Newark, New Jersey, defendant, BERNICE ISGRIG, intervenor-appellee.

No. 47697.

(Reported in 45 N.W.2d 425)

DECEMBER 12, 1950.

REHEARING DENIED FEBRUARY 9, 1951.

Merle L. Royce, of Marshalltown, for appellant.

E. E. Bachman, of Marshalltown, and Lundy, Butler & Lundy and Donald C. Wilson, all of Eldora, for intervenor-appellee.

Henry & Henry, of Des Moines, for interpleader-Prudential Insurance Company of America.

OLIVER, J.—In 1934 defendant issued the $500 life insurance policy here involved to Lyle Isgrig, of Marshalltown, Iowa. Lena J. Isgrig, wife of Lyle, was named beneficiary. They were divorced in 1939. Their daughter, Beverly, who was then four years old, has since lived with Lena. In 1939, after the divorce,

Lyle changed the beneficiary in the insurance policy to his brother, plaintiff-Lester W. Isgrig who agreed to hold the proceeds of the policy in trust for Beverly. The policy was returned to Lena and was thereafter kept in her bank box. In 1941 Lyle Isgrig (the insured) married intervenor-Bernice (Isgrig). Later he served in the second World War and procured and carried a $5000 government life insurance policy payable to the daughter, Beverly.

The $500 policy here involved provides the insured may at any time "by written notice to the company at its Home Office, change the beneficiary", such change to become effective only when a provision to that effect is indorsed on or attached to the policy by the company. Shortly after his second marriage Lyle sought to change the beneficiary to his wife, intervenor-Bernice. Lyle and Bernice discussed the matter with Mr. Haefner, an agent for defendant-insurance company at Marshalltown. Lyle said he wanted the beneficiary changed to Bernice "because he thought they shouldn't pay the premium on it if the proceeds wasn't going to them * * *." However, the former wife, Lena, had the policy and they took no action. Later there were other discussions. Lyle threatened to let the policy lapse unless the beneficiary was changed. Mr. Haefner testified that about 1946 "I told Lyle Isgrig I would endeavor to get the policy if willing, the other party to give it up." Also, "He seemed to give me the impression that it was futile on his part, in his efforts to secure the policy."

Mr. Stevens, another agent of the insurer, testified he took three separate applications from Lyle Isgrig for change of beneficiary to Bernice, on the regular form furnished by the company. In 1947 "Lyle asked me for a change of beneficiary blank, and we proceeded to sign it * * *. He told me it [the policy] was in the possession of his former wife. I turned this form that had been completed by Lyle Isgrig into the [Marshalltown] office and asked Mr. Haefner to attempt to get the policy because he knew the former wife. On one occasion he [Lyle] had a lost policy form made out to see if he could get a duplicate of the policy, addressed at the office and they said no." The local office did not forward this to the home office "because to our knowledge the policy wasn't lost."

None of these earlier applications for change of beneficiary was forwarded to the home office of the company. Apparently they were destroyed at the local office. The application here involved was made October 20, 1948. Lyle's former wife lived in Marshalltown with her sister, Mrs. Gannon, and her mother. Mrs. Gannon testified for plaintiff that in November 1948 Mr. Haefner telephoned her "and said that Lyle's wife was hollering again about paying the policy [premium] and that he had forgotten who the beneficiary was and could he, Mr. Haefner, see the policy * * *. I told my sister * * * and she got the policy [from the bank] the next day." (Mr. Haefner and Mr. Cline, assistant district manager for the company, called and examined the policy.) "Then I said to him, 'Do you want to take the policy with you,' and Mr. Cline said 'no' and handed me the policy back."

Mr. Cline denied this and testified: "She didn't offer to let us take the policy."

Mr. Haefner testified: "All I know, she thought the policy should stay in her possession. I think she probably asked us whether we wished to take the policy with us, or words to that effect. I think we told her that we wouldn't attempt to keep the policy because we had no claim to it."

Lyle Isgrig died January 15, 1949, under circumstances which brought into effect the double-indemnity clause of the policy. In the meantime his application for change of beneficiary had been held at defendant's Marshalltown office, from which the home office in Newark, New Jersey, received it February 15, 1949. Later plaintiff, Lester W. Isgrig, instituted this action against the insurance company. The company answered, admitting its liability and its refusal to pay plaintiff, stated Bernice L. Isgrig also claimed the proceeds of the policy under insured's written request for change of beneficiary made October 20, 1948, and that it was indifferent between these conflicting claims and could not safely pay either claimant but was willing to pay the one found legally entitled to the fund.

Bernice L. Isgrig was brought into the case as intervenor, the insurance company deposited with the clerk of the district court $1073.25, the amount agreed to be due under the policy, and trial between plaintiff and intervenor, upon the issues raised

by their pleadings, resulted in judgment for intervenor and this appeal by plaintiff.

I. The trial court found Lyle did all he was required to do to effect the change and that there was an equitable change of beneficiary to intervenor-Bernice. We agree with this conclusion. The policy provides the insured may change the beneficiary "by written notice to the company at its Home Office." Lyle executed this notice on the regular form prepared by the company. This was done under the supervision of its agents who took possession of the notice on behalf of the company. The failure to promptly transmit the notice from its local office to its home office was the failure of the company. It was not chargeable to Lyle. After he advised the company of the change of beneficiary the only act remaining to be done to formally complete the change was the indorsing on or attaching to the policy by the company of the provision to that effect. This indorsement or attachment was a ministerial act which did not permit the exercise of discretion by the company. Moreover, it was for the benefit of the company and could be waived by it. Thomas v. Locomotive Engineers Mutual L. & Acc. Ins. Assn., 191 Iowa 1152, 183 N.W. 628, 15 A. L. R. 1240; Holden v. Modern Brotherhood, 151 Iowa 673, 132 N.W. 329.

Plaintiff contends the reason the company did not perform this formal act was that Lyle failed to produce the insurance policy. One answer to this contention is that agents of the company had temporary possession of the policy during their call upon Mrs. Gannon after Lyle had given notice of change of beneficiary and, it may be said, pursuant to such notice. The reason given by them for their failure to have the provision indorsed or attached to the policy or to hold it for that purpose was that they did not have with them at the time the notice of change of beneficiary, given them by the assured. However, the notice was in the possession of the company at the local office and was, of course, accessible to these agents. That the change of beneficiary was not indorsed upon or attached to the policy was due to the inaction of the insurer, not the insured. We hold the acts of the insured and the conduct of the insurer were sufficient to constitute the change of beneficiary in equity, at least as between plain-

tiff and intervenor. Thomas v. Locomotive Engineers Mutual L. & Acc. Ins. Assn., 191 Iowa 1152, 183 N.W. 628, 15 A. L. R. 1240; Hirschl v. Clark, 81 Iowa 200, 47 N.W. 78, 9 L. R. A. 841.

II. The result is the same if the case is considered from the standpoint of assured's inability to procure the policy for indorsement of the change of beneficiary. Plaintiff argues there was no evidence Lyle's former wife refused to surrender the policy to him. The record indicates Lyle thought further efforts on his part to secure the policy from her would be futile, but his lips were sealed by death and there was no direct evidence of such refusal. However, it is the general rule that the refusal of the beneficiary to surrender the policy need not be affirmatively shown because it is a fair inference the policy would not have been surrendered if demanded. Doering v. Buechler, 8 Cir., Minn., 146 F.2d 784; McDonald v. McDonald, 212 Ala. 137, 102 So. 38, 36 A. L. R. 761; Bowser v. Bowser (1949) Okla., 211 P.2d 517; 29 Am. Jur., Insurance, section 1317, pages 987, 988. Although in the case at bar the policy was payable not to the divorced wife but to a trustee for the benefit of the daughter who lived with the divorced wife, we conclude the foregoing rule is here applicable.

In addition the record shows the assured had been attempting to make the change of beneficiary over a period of years, had frequently sought to have agents of the company secure the policy from his former wife, had at least four times executed and delivered to the insurer a change of beneficiary form, had attempted to secure a duplicate policy, and had even threatened to let the policy lapse if the beneficiary could not be changed. The circumstances warrant the conclusion that it was beyond the power of the insured to secure the policy for indorsement. Hence, a court of equity will consider the case as though the company had indorsed or attached to the policy the provision for or register of the change of beneficiary. Holden v. Modern Brotherhood, 151 Iowa 673, 132 N.W. 329.

III. The foregoing pronouncements determine the case and render unnecessary the consideration of various other propositions presented by the briefs. Plaintiff relies largely upon such cases as Jacobs v. Lincoln Life Ins. Co., 223 Iowa 1157, 274 N.W.

879; Shuman v. Ancient Order of United Workmen, 110 Iowa 642, 82 N.W. 331; Modern Woodmen v. Little, 114 Iowa 109, 86 N.W. 216; and Ehlerman v. Bankers Life Co., 199 Iowa 417, 200 N.W. 408. In each of these cases the original beneficiary prevailed. However, in none of them was the application for change of beneficiary delivered to the insurer or its agents or representatives until after the death of the insured. In the Jacobs case the attorney for assured had the application when assured died. The next day the beneficiary secured the papers and delivered them to the local recorder who forwarded them to the home office. Insured's agent in the Ehlerman case failed to forward the papers to the company until after the death. In the Little case the letter requesting the change addressed to the local secretary of the lodge was not received until after the member's death. In the Shuman case the application was prepared the day before assured died but the association had no knowledge he desired a change until after his death.

In each of the cited cases holding to the contrary and in the case at bar the application for notification of change of beneficiary was delivered to the insurer or its agent or representative prior to the death of assured. In Wandell v. Mystic Toilers, 130 Iowa 639, 105 N.W. 448, the certificate was delivered to the secretary of the local council prior to assured's death, although due to the secretary's delay in mailing it did not arrive at the home office until after his death. In Holden v. Modern Brotherhood, 151 Iowa 673, 132 N.W. 329, the company was advised of the change before the death of assured. That was the situation also in Hirschl v. Clark, 81 Iowa 200, 47 N.W. 78, 9 L. R. A. 841, and Thomas v. Locomotive Engineers Mutual L. & Acc. Ins. Assn., 191 Iowa 1152, 183 N.W. 628, 15 A. L. R. 1240.

Although this may be deemed oversimplification, the Jacobs case and like decisions may be said to be examples of unexecuted intent to make a change of beneficiary, while in the other group of cases notice was given the insurer or its representative before the death of the assured and it was held the circumstances present excused noncompliance with other requirements or formalities. An action of this nature is in equity, is governed by equitable rules and usually is more largely controlled by its particular facts

than by arbitrary or catalogued rules. Our decisions may, in general, be reconciled upon this basis. We are satisfied the facts and equities in the case at bar require the conclusion the change of beneficiary was accomplished.—Affirmed.

All JUSTICES concur.