17148

FANNIE SWYGERT, Respondent, v. DURHAM LIFE
INSURANCE COMPANY, Appellant

(92 S. E. (2d) 478)

200

*John W. Crews, Esq.,* of Columbia, *for Appellant,*

*Messrs. C. T. Graydon and Augustus T. Graydon,* of Columbia, *for Respondent,*

*John W. Crews, Esq.,* of Columbia, *for Appellant, in Reply.*

April 24, 1956.

OXNER, Justice.

This is a suit on a life insurance policy for $1,000.00 issued by the Durham Life Insurance Company to Charles B. Hornsby on May 1, 1942. The insured died in January, 1955 and the Company paid the amount of the policy to his wife whom it considered as the lawfully designated beneficiary. Thereafter plaintiff, Mrs. Fannie Swygert, claiming that she was the beneficiary, brought this action against the Company to recover the face amount of the policy with interest. The case was tried in April, 1955. At the conclusion of plaintiff's testimony, the Company unsuccessfully moved for a nonsuit, and upon conclusion of all the testimony both plaintiff and defendant moved for a directed verdict. The Court determined that the facts were undisputed and the

issue solely one of law, and withdrew the case from the jury. After considering briefs of counsel, the trial Judge in an order filed on June 21, 1955, found that plaintiff was the lawful beneficiary and awarded her judgment for $1,000.00 with interest.

When the policy was issued, insured's mother, Mittie Hornsby, was designated as the beneficiary. The right to change the beneficiary was reserved in the policy in the following terms: "With the consent of the Company, the Insured may from time to time while this policy is in force change the beneficiary by request to the Home Office, upon the Company's prescribed form, accompanied by this policy, such change to take effect only upon endorsement thereon."

On August 24, 1942, at the request of the insured, the beneficiary was changed from his mother to plaintiff, Mrs. Fannie Swygert, whose relationship in the application for change of beneficiary was described as "intended wife." The change was duly endorsed by the Company on the policy, which was shortly thereafter delivered to the plaintiff.

Plaintiff was a widow residing in Columbia and the insured was single. For some years prior to 1942, they had been going together and finally became engaged. The insured gave her an engagement ring. The engagement was broken about 1947. The plaintiff never returned the ring and gave it to her daughter. She kept the policy and testified that insured never asked her to return it but, on the contrary, two or three years prior to his death told her that he was paying the premiums and for her to keep the policy.

On August 31, 1948, the insured applied on a form furnished by the Company for a new certificate of insurance, in which he stated:

"I hereby declare that the above Policy has been lost or destroyed, and because of that fact I hereby apply for a Certificate of Insurance.

"I agree that should the original Policy be found that the Certificate of Insurance will be null and void, and that I will

immediately return the Certificate of Insurance to the Company for cancellation."

A new certificate was duly issued and delivered to the insured. On June 27, 1949, insured applied on the prescribed form for a change of beneficiary from the plaintiff, Fannie Swygert, to one Lillian B. Adams. The requested change was made and endorsed on the back of the certificate. During February, 1954, he requested that the beneficiary be changed from Lillian B. Adams to Gertrude Hornsby, whom he had married. This change was likewise made by the Company and endorsed on the back of the certificate.

Plaintiff testified that four or five days after learning of the death of the insured, she called the Columbia office of the Durham Life Insurance Company and stated that the policy was in her possession. The person to whom she talked replied that he had a check on his desk for the amount of the policy which he was mailing to insured's wife, and requested plaintiff to mail the policy to him. She did not do so and was still in possession of the policy when this action was instituted. It is conceded that all premiums were paid by the insured.

It is now well established under our decisions that where a right to change the beneficiary has been reserved to the insured in the policy, the named beneficiary, during the lifetime of the insured, has not a vested right or interest but a mere expectancy, and the complete control of the policy remains in the insured. *Davis v. Acacia Mutual Life Insurance Co.,* 177 S. C. 321, 181 S. E. 12; *Shuler v. Equitable Life Assur. Soc. of United States,* 184 S. C. 485, 193 S. E. 46. Although the beneficiary has only an inchoate right, the general rule is that unless waived, an insured in making a change of beneficiary must substantially comply with the method prescribed in the policy. *Wannamaker v. Stroman,* 167 S. C. 484, 166 S. E. 621; *Wilkie v. Philadelphia Life Ins. Co.,* 187 S. C. 382, 197 S. E. 375. Of course, upon the death of the insured, the rights of the bene-

ficiary become vested. *Babb v. Paul Revere Life Ins. Co.,* 224 S. C. 1, 77 S. E. (2d) 267.

It is equally well settled that where, as here, in order to effect a change of beneficiary the policy must be delivered to the Company for endorsement, such requirement is primarily for the protection of the Company and may be waived by it during the lifetime of the insured. "The obvious purpose of the production of a policy and indorsement thereon of change of beneficiary is to evidence the consent of the insurer to a result accomplished at the request of the insured and to obviate the possibility of conflicting claims. * * * The insured, as one party to the contract, and the insurer, as the other, could waive indorsement on the policy of change of beneficiary." *Quist v. Western & Southern Life Insurance Co.,* 219 Mich. 406, 189 N. W. 49, 50. In an extended annotation in 19 A. L. R. (2d), at page 113, it is stated that "practically all courts seem to agree that if the insurer waives its right to insist on a compliance with the policy provisions as to change of beneficiary during the lifetime of the insured, the original beneficiary is not entitled to rely upon the failure of the insured to comply with the policy requirements for his or her protection." However, as shown in the foregoing annotation, most courts hold, and we think properly so, that after the death of the insured the rights of the beneficiary become fixed and that the company cannot thereafter by waiver or other act prejudice or divest the right of a beneficiary which became vested upon the death of the insured.

In accordance with the foregoing principles, it has been held that where on the application of the insured, a new certificate or duplicate policy is issued with a change of beneficiary or where such change is subsequently endorsed on the new certificate, the company waives the right to require the production of the original policy and the first-named beneficiary cannot complain of insured's failure to surrender same. *Supreme Council of Royal Arcanum v. Behrend,* 247 U. S. 394, 38 S. Ct. 522, 62 L. Ed. 1182, 1

A. L. R. 966; *Royal Union Mutual Life Insurance Co. v. Lloyd,* 8 Cir., 254 F. 407; *Fletcher v. Wypiski,* 120 Ind. App. 622, 94 N. E. (2d) 916; *Witt v. John Hancock Mut. Life Ins. Co.,* 246 App. Div. 614, 282 N. Y. S. 874; Annotation 1 A. L. R., beginning on page 972. In *Royal Union Mutual Life Insurance Co. v. Lloyd* [254 F. 410], the Court said: "The provision for a return to the company of the original policy, so that an indorsement of change of beneficiary may be made thereon, is one for the protection of the company, and not for the protection of the original beneficiary, and * * * if a new policy has been issued in the lifetime of the insured, at his request the original beneficiary will not be heard to complain that the original policy was not returned."

And it has been further held that the original beneficiary cannot complain because the company was induced to issue a new certificate or policy by false representation on the part of the insured that the original had been lost or misplaced. *Witt v. John Hancock Mut. Life. Ins. Co., supra; Royal Union Mutual Life Insurance Co. v. Lloyd, supra; Alfama v. Rose,* 323 Mass. 643, 83 N. E. (2d) 868, 869. In the last mentioned case the Court said: "On this record it is immaterial that the insured represented the certificate as lost when in fact the first beneficiary was withholding it from him." In *Witt v. John Hancock Mut. Life Ins. Co., supra* [246 App. Div. 614, 282 N. Y. S. 875], the Court stated: "The provision providing that a change of beneficiaries could only be accomplished with the consent of the company by an indorsement on the policies was one for the benefit of the insurer, which it could waive if it saw fit so to do. The fact that at a time when the policies had lapsed, such waiver was procured by a false representation that the policies were lost, made by the deceased to induce the company to issue certificates of lost policy, did not change the legal situation so far as the company was concerned. It had a strict legal right to make payment to the person designated as the beneficiary at the time of the death of Ethel Drucker, the deceased."

In Appleman, Insurance Law and Practice, Volume 2, Section 1063, it is stated: "The theory in back of this result is that the beneficiary is not a party to the contract, nor does he have any rights during the lifetime of the insured. Consequently, he has no standing or basis from which to raise such objections. * * * Accordingly, such claimant to the proceeds may not object that certain by-laws were not followed in making a change of beneficiary, that an affidavit as to the loss of a first certificate was false, that the first certificate was not surrendered * * *."

It is true that in *Wannamaker v. Stroman, supra,* 167 S. C. 484, 166 S. E. 621, 623, Mr. Justice Cothran said: "The argument advanced in some of the cases that the provision for a change of the beneficiary with certain solemnities is inserted for the protection of the insurance company alone, and that that protection may be waived by the company, does not appeal to me as sound." It will be noted, however, that two members of the Court dissented and the remaining two concurred in the result only. Be that as it may, it was sought in that case to establish waiver after the death of the insured and the view expressed by this learned Jurist doubtless was not intended to apply to questions of waiver arising during the lifetime of the insured.

It is our conclusion that by issuing a new certificate to the insured and endorsing thereon a change of beneficiary, the Company waived the right to require the production of the original policy and that the plaintiff cannot complain of the failure of the Company to require its production, nor can she complain that the Company was induced to issue the new certificate by insured's representation that the original had been lost when in fact he knew it was in her possession. We also do not regard as material plaintiff's testimony that the Company's agent told her about 1944 to "keep the policy", from which it is argued that the Company should have known that plaintiff had the original policy when the new certificate was issued. The Company was at liberty to accept the statement of the insured that the pol-

icy had been lost and was further empowered, as hereinabove stated, to waive its production.

While there is no case in this jurisdiction involving the precise question before us, the recent decision in *Dryman v. Liberty Life Insurance Co.,* 216 S. C. 177, 57 S. E. (2d) 163, 164, 14 A. L. R. (2d) 371, tends to sustain our conclusion. The policy there involved provided that no change of beneficiary would be effective unless endorsed on the policy. The insured desired to change the beneficiary but was unable to locate his policy. On forms furnished by the company, he applied for a duplicate policy and also requested that the beneficiary be changed. A duplicate policy was duly issued upon which the beneficiary was changed by endorsement. In holding that the substituted beneficiary was entitled to recover, the Court said:

"There is conflicting testimony as to whether the whereabouts of the respondent could have been ascertained at that time, she being suspected of having taken the policy with her, but the insurer company accepted the written statement of the insured that the original policy was lost, issued a duplicate policy, and endorsed thereon the change of beneficiary in accord with his written request therefor, and delivered the duplicate policy. We are of opinion that this change of beneficiary was effected in substantial compliance with the provisions of the policy governing the change of beneficiary. And especially is this true where, as here, the testimony is inconclusive that the beneficiary named in the original policy had more than an inchoate right therein."

There is another ground requiring reversal of a directed verdict for plaintiff. It cannot be said as a matter of law, as held by the Court below, that the insured failed to do everything reasonably within his power to comply with the provisions for change of beneficiary. Notwithstanding the fact that on the trial of the case plaintiff stated that she would have surrendered the policy had the insured so requested, we think under all the circumstances it would have been at least a question of fact for the jury as to

whether she would have complied with such request. It has been held in numerous cases that it need not affirmatively appear that the original beneficiary refused on demand to give up the policy where the relationship between the parties is such as to warrant a fair inference that the policy would not have been surrendered if demanded. *McDonald v. Mc-Donald,* 212 Ala. 137, 102 So. 38, 36 A. L. R. 761; *Doering v. Buechler,* 8 Cir., 146 F. (2d) 784; *Alfama v. Rose, supra,* 323 Mass. 643, 83 N. E. (2d) 868; *Commonwealth Life Ins. Co. v. Lowry,* D. C., 41 F. Supp. 1; *Supreme Tent, Knights of Maccabees of the World v. Altmann,* 134 Mo. App. 363, 114 S. W. 1107; *Isgrig v. Prudential Insurance Co. of America,* 242 Iowa 312, 45 N. W. (2d) 425; *Bowser v. Bowser,* 202 Okl. 97, 211 P. (2d) 517; 29 Am. Jur., Insurance, Section 1317. Although in each of these cases there was no evidence that the original beneficiary refused to surrender the policy, it was found that there had been substantial compliance. In *Isgrig v. Prudential Insurance Co. of America, supra* [242 Iowa 312, 45 N. W. (2d) 427], the Court said:

"The result is the same if the case is considered from the standpoint of assured's inability to procure the policy for indorsement of the change of beneficiary. Plaintiff argues there was no evidence Lyle's former wife refused to surrender the policy to him. The record indicates Lyle thought further efforts on his part to secure the policy from her would be futile but his lips were sealed by death and there was no direct evidence of such refusal. However, it is the general rule that the refusal of the beneficiary to surrender the policy need not be affirmatively shown because it is a fair inference the policy would not have been surrendered if demanded."

We attach no significance to the fact that the Company paid the amount of the policy to the insured's wife, the substituted beneficiary, with the knowledge that plaintiff had the policy and might assert some claim to the proceeds. It was for the Company alone to determine whether it desired

to assume the risk of a subsequent adjudication that the plaintiff was the lawfully designated beneficiary.

Judgment reversed and case remanded for entry of judgment in favor of appellant.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.