DAHLIN *v.* KNIGHTS OF THE MODERN MACCABEES FOR MICHIGAN.

LIFE INSURANCE — MUTUAL BENEFIT SOCIETIES — BENEFICIARIES— WIDOWS—EFFECT OF DIVORCE.

> Under section 1, Act No. 119, Pub. Acts 1893, providing that payment of benefits by fraternal beneficiary societies shall be made only to the widows,.etc., of the members, and a by-law, applicable to the certificate in question, providing that a divorce shall annul a designation of a member's wife as his beneficiary, the divorced wife of a member, designated as his beneficiary prior to the divorce, does not become his widow upon his death, and has no interest in the certificate, especially in a case where the member, prior to his death, designated his estate as his beneficiary, which he might lawfully do.

Error to Oakland; Smith, J. Submitted June 11, 1907. (Docket No. 76.) Decided March 31, 1908.

Assumpsit by Anna Dahlin against the Knights of the Modern Maccabees for Michigan upon a policy of insurance. There was judgment for plaintiff on a verdict directed by the court, and defendant brings error. Reversed.

*John B. McIlwain*, for appellant.

*Andrew L. Moore*, for appellee.

MOORE, J. This suit is brought upon a benefit certificate issued in July, 1890, by the defendant to John Dahlin, in which certificate are the following provisions: .

"In case all the agreements and warranties made by him in his application are found to be true and he continues to comply with the constitutions, laws, rules and regulations of the Great Camp for Michigan, which are now or may hereafter be in force, his beneficiary, to wit, Anna Dahlin, his wife, will be entitled to receive one

assessment on the membership, but not to exceed One Thousand Dollars.    *    *    *

"This certificate is subject to the conditions, limitations, warranties and agreements contained in the application for membership executed by the said member, John Dahlin, which said application is made a part hereof."

John Dahlin in January, 1903, filed a bill for a divorce in the circuit court for Wayne county, in chancery, and a decree was rendered in his favor in said cause against said Anna Dahlin June 29, 1903. June 25, 1903, a stipulation was signed by the solicitors for the parties and filed in said cause, that "alimony both temporary and permanent, besides costs and expenses," had been adjusted by the parties.

Mr. Dahlin and his wife had no children, and since said decree he has contributed nothing to her. Before his death he made a will disposing of his property.

On the back of the certificate is a blank form to be filled out by a member in case he desires to change his beneficiary. The blank was filled out to read as follows:

"I, John Dahlin, to whom the within certificate was issued, do hereby revoke my former directions as to payment of the endowment fund due at my death, and now authorize and direct such payment to be made to my estate, executors, estate or assigns.

"Witness my hand and seal this 4th day of May, 1905.
　　　　　　　Signed,　　　　"JOHN DAHLIN."

The certificate was forwarded to the record keeper of the Tent with the following letter:

　　　　　　　　　　　　　　"May 4, 1905.
"RECORD KEEPER OF ELECTRIC TENT, NO. 25, KNIGHTS OF THE MODERN MACCABEES.

"*Dear Brothers:* Enclosed please find certificate No. 22,880 which you will kindly cancel and issue me a new certificate payable to my executors, estate or assigns, as you know I am divorced from my wife, Anna Dahlin, and having no relatives living I wish my insurance to be made payable to my estate. Enclosed please find fifty

cents, being the cost of transferring certificate. I trust you will hurry it through.

"Yours fraternally,
"JOHN DAHLIN,
"Per J. E. B."

"J. E. B." was Doctor J. E. Burgess, the attending physician.

When this certificate with the request for a change was received by the officers of the Tent, it was believed the certificate could not be made payable to his estate, and the commander and record keeper of the Tent went to Mr. Dahlin and so informed him, and told him he would have to make the certificate payable to some person, and he then directed the commander to change it and make it payable to Thomas Smyth with whom he had been living, and designated him therein as his dependent, and the change was there made by the commander of the Tent at the request of the deceased, and witnessed by the commander. The change was approved by both the commander and record keeper. The certificate, with request for a change, and a dollar, were then sent to the great record keeper at Port Huron, together with a letter from the local record keeper requesting the change to be made. The certificate and the one dollar were returned for further proof that Mr. Smyth was a dependent. John Dahlin had an operation in the meantime, and before the correspondence was finished he died.

Anna Dahlin presented a claim; it was disallowed. She sued and a judgment was directed in her favor. The case is brought here by writ of error.

Defendant contends the court erred in directing a verdict for plaintiff, as the latter is a stranger to its benefit funds; that whatever interest or expectancy plaintiff once had under the certificate has been directly cut off—

1st. By the divorce.

2d. By the subsequently enacted by-law providing divorce should annul the designation.

3d. By the act of the deceased, revoking plaintiff's designation as beneficiary.

On the part of plaintiff it is contended that as the re-
fusal of the Great Camp to pay was based solely upon the
fact that the plaintiff was divorced from deceased, that
the only question to be considered is whether the reason
given was a valid one for refusing payment.

What then is the relation of the plaintiff to the bene-
ficiary fund mentioned in the certificate? The certificate
is made subject to the conditions, limitations, warranties
and agreements of the application. The application had
the provision:

"I hereby agree that these statements, with this appli-
cation and the constitution and laws now in force or that
may hereafter be adopted by the Great Camp of the
Knights of the Maccabees for Michigan, shall form the
basis of the contract for endowment   *   *   *   and that
the constitution and laws of the said Great Camp now in
force or that may hereafter be adopted shall be binding
on myself and my beneficiary or beneficiaries."

In 1894 a proviso was added to section 81 of the by-
laws as follows:

"Provided, in case a wife is designated as beneficiary
and subsequent thereto becomes divorced from the mem-
ber, such divorce shall ipso facto annul the designation."

Section 1 of Act No. 119 of the Public Acts of 1893,
which is applicable to this case, reads:

"Payment of death benefits shall be made only to the
widows, children and dependent children, mother, father,
sister, brother, or blood relatives to the fourth degree of
the member: *Provided*, That where an applicant or
member has no relative as above provided, to whom he
may make his certificate payable, in such case he may
designate any other person, or make his estate his benefi-
ciary."

In the case of *Union Mut. Ass'n* v. *Montgomery*, 70
Mich. 587, Justice CHAMPLIN, speaking for the court, said:

"The same rules of construction should be applied to
dispositions of property created by these mutual benefit
associations as are applied to bequests by wills. They
partake of the nature of testamentary dispositions of

property.   It is well established law in this State that the policy of our statutes favors vested in preference to contingent estates, and that, unless an intention appears to the contrary, the will shall operate from the death of the testator, and estates vest at that time.   *Rood* v. *Hovey*, 50 Mich. 395; *Porter* v. *Porter*, 50 Mich. 456; *Toms* v. *Williams*, 41 Mich. 552; *Eberts* v. *Eberts*, 42 Mich. 404."

In *Lansing* v. *Haynes*, 95 Mich. 16, Justice GRANT, speaking for the court, said:

"By the decree of divorce in this case, the parties became as strangers to each other, and neither owed to the other any obligation or duty thereafter.   There was, therefore, a complete change in these relations, within the language above quoted from Chancellor Kent.   It is not, in my judgment, the natural presumption that, after the testator had settled with her, had conveyed to her a good share of his property, and they, by agreement, had terminated all their property, as well as their marital, relations, the will executed nearly 10 years before should remain in force, and operate upon his death as a conveyance of the remainder of his property to her, to the exclusion of his heirs.   If this were so, then it would follow that, if he had children living, or a dependent mother or other dependent relatives, or a second wife without issue, his duties and obligations towards them must be set aside, in favor of a most harsh and unjust rule. The like result would follow where the husband had obtained a divorce from his wife on the ground of her adultery, and she had become a common prostitute; or where the wife had obtained a divorce for a like reason, or because her husband had committed a felony, for which he was incarcerated in prison.   To hold the will unrevoked under these circumstances would be repugnant to that common sense and reason upon which law is based.   I do not think the common law is so unbending as to lead to this result.   'The reason of the law is the essence and soul of the law.'"

We have then a case whereby the statute payments of benefits shall be made only to widows, etc., of the member.   Where the certificate refers to the application and makes it a part thereof and the certificate and the appli-

cation with the constitution and laws then in force or thereafter to be adopted, it is agreed shall form the basis of the contract. It is provided in the certificate that if the member carries out his agreement, Anna Dahlin, his wife, shall be entitled to the fund. The statute provided payment might be made to his widow. The beneficiary thus named ceased to be the wife of the member by reason of the divorce some years before his death. She was not his widow after his death. The member recognized the situation when he caused the letter of May 4, 1905, to be written, in which he referred to the fact of his divorce. From whatever point of view the case is regarded, we think it clear the plaintiff has no cause of action against defendant. See *Brinen* v. *Benefit Ass'n*, 140 Mich. 220; *Supreme Lodge O. M. P.* v. *Dewey*, 142 Mich. 666; *Kaminski* v. *Great Camp K. O. T. M. M.*, 146 Mich. 16. Instead of directing a verdict in favor of plaintiff it should have been directed in favor of defendant.

Judgment is reversed, and new trial ordered.

GRANT, C. J., and HOOKER, CARPENTER, and McALVAY, JJ., concurred.