LEOTA W. THOMAS, Appellee, v. LOCOMOTIVE ENGINEERS' MU-
TUAL LIFE & ACCIDENT INSURANCE ASSOCIATION, Appellee;
MARGARET BARR HOPKINS et al., Interveners,
Appellants.

**APPEAL AND ERROR:** Scope of Review—Following Method of Trial
1  in Lower Court. An action properly triable in equity, but which the
court refused to transfer to equity, but tried exactly as he would
have tried it had he sustained the motion, will be heard *de novo*
on appeal.

**INSURANCE:** Fraternal Beneficiary Society—Equitable Change of
2  Beneficiary. A change of beneficiary is effected in equity by the
insured under a fraternal policy of insurance by furnishing, during
his fatal sickness, every fact and performing every act required of
him *by the insurer*, even though such facts are not furnished and
such acts are not performed in strict compliance with the constitution
and by-laws of the society, and even though such change is not
formally executed. Especially is this true when the society pays
the amount of the policy into court, and goes hence.

**INSURANCE:** Fraternal Beneficiary Society—Waiver in re Change of
3  Beneficiaries. Provisions in the by-laws and constitution of a fra-
ternal beneficiary insurance association prescribing the particular
procedure for changing beneficiaries are for the sole benefit and
protection of the association; and if the association sees fit to waive
its rights, *no one else may object that the prescribed procedure was
not followed.*

**INSURANCE:** Authority of Agent to Effect a Waiver. A divisional
4  agent of an insurance association—one who transacts all the
association's business in an assigned part of the country—may
waive a policy provision designed for the sole benefit of the associa-
tion, especially when the conduct of the association is an affirmance
of the action of its agent.

**INSURANCE:** Effect of Divorce of Beneficiary. The right of insured's
5  wife to take the avails of a policy of insurance payable to her as
"wife" *ipso facto* ceases upon the entry of a decree of divorce, it
appearing that the laws of the state under which the insurer was
organized *prohibit payment* to a beneficiary who is not the "wife,"
etc., of the insured.

**INSURANCE:** Administrator's Right to Avails. An administrator has
6  no right to the avails of a policy of insurance payable to "the
heirs" of insured.

*Appeal from Polk District Court.*—GEORGE A. WILSON, Judge.

JULY 14, 1921.

THE cause tried was to determine the ownership of the proceeds of a certificate issued by the defendant insurance association. The insurance association paid the money into court on interpleading for determination between plaintiff and interveners as to the ownership. Plaintiff claimed the fund as the original beneficiary. Intervener Margaret Barr Hopkins claimed the fund as the new beneficiary, alleging that insured had made a change of beneficiary from plaintiff to her; and also, she claimed the fund as the only heir at law of the insured. Intervener W. T. Barr, administrator of insured's estate, also claimed to be entitled to the insurance money. The facts appear in the opinion.—*Reversed.*

*Lee & Garfield, Roy E. Cubbage,* and *Bert B. Welty,* for appellants.

*W. H. McHenry,* for appellee.

ARTHUR, J.—I. There is practically no dispute concerning the facts involved in this case. Defendant Locomotive Engineers' Mutual Life & Accident Insurance Association was a corporation organized and existing under the laws of Ohio, engaged in business as a mutual benefit insurance company. On June 20, 1904, the defendant association issued a certificate of membership to J. F. Barr in the amount of $1,500. The policy provided:

"All payments or benefits that may accrue or become due by virtue of this policy shall be payable to Margaret Barr, sister, or his lawful heirs."

On May 24, 1905, insured, having, in the meantime, married plaintiff in this case, applied for a change of beneficiary, and a new certificate was issued to him, which provided that the payments were to be payable to "Leota W. Barr, *wife,* or the insured's lawful heirs." On April 30, 1908, the plaintiff and insured were granted a decree of divorce by the district court of Polk County, Iowa. On November 9, 1916, J. F. Barr died

intestate, never having remarried, without issue, and leaving no parents surviving him. On the trial, plaintiff introduced evidence tending to show that Barr and she had become reconciled, and were engaged to be remarried at the time of Barr's death.

Defendant association interpleaded, admitting its liability on the policy sued on, and stated that it did not know to which of claimants the proceeds of the policy should be paid; that it had no claim on the proceeds of the certificate; and that it had paid the money to the clerk of the district court, to be awarded as the court, under the facts, should direct.

Fifteen days before the death of J. F. Barr, on October 25, 1916, and after Barr had undergone the first of two critical surgical operations, he wrote to the insurance secretary of the division to which he belonged, requesting that the beneficiary in his insurance policy be changed from his former wife, Leota W. Thomas, to his sister, Mrs. P. F. Hopkins, and stating that his former wife had the policy in her possession, and asking if he had to send in the policy, and enclosing $1.00 as fee for making the change. On October 29, 1916, the secretary of the insurance company, answering Barr's letter of October 25th, wrote Barr, acknowledging receipt of his letter and inclosure of $1.00, and telling Barr that it was necessary for him to return the old policy; that, if he could not get the old policy, it was necessary for him to make a request to him (Canney, secretary), explaining the reason Barr could not produce the old policy, so that Canney could send the letter of explanation with his request for the change desired. On October 31, 1916, 10 days before he died, in reply to the secretary's letter of October 29th, Barr wrote the secretary that his former wife had the old policy, and that he could not get it; that he was divorced from his former wife; and that he wanted the policy made out to his sister, Mrs. Margaret Barr Hopkins.

Testimony was introduced, showing that it required about 4½ hours for a letter to go from Des Moines to Ottumwa, where the secretary had his office, and that it required about 36 hours for a letter to go from Des Moines to Cleveland, Ohio, the home office, and would take a little less than 36 hours for a letter to go from Ottumwa to Cleveland, Ohio.

Section 24 of the constitution and by-laws of the defendant provides as follows:

"Any member wishing to change his beneficiary in his policy or policies can do so by returning, through the insurance secretary of the division to which he belongs, the policy or policies in his possession, with a written request over his own signature, giving full name and relationship of present beneficiary or beneficiaries, and those of the new beneficiary or beneficiaries who must be in one of the classes designated in Section 1. Being unable to return old policy or policies, duplicates will be granted by member's making affidavit of the facts on a form supplied by the home office, executed before an officer authorized by law to administer oaths, and waiving all benefits or rights to himself and his beneficiaries named in former policy or policies held by him, such change to be effective from the date borne by the request, providing the new beneficiaries are in one of the classes designated in Section 1, for which a fee of 25 cents will be charged for each policy changed."

The information regarding loss of the policy was not furnished on the form provided by the home office. No blank form, as required by the by-laws of the defendant, on which to write the information as to the loss of the old policy, was ever furnished Mr. Barr, but information as to the loss of the policy was furnished in the letter written by Barr to the secretary, of date of October 31, 1916.

Section 1 of the by-laws of defendant order contained the following, regarding the payment of benefits:

"The object of this association is to pay to the 'family, heirs, relatives by blood, marriage or legal adoption, affianced wife, or to a person or persons dependent upon the members' of said association, stipulated amounts of $1,500, $3,000, and $4,500."

At the time of the adoption of the constitution and by-laws of the defendant, the above, contained within the single quotations, was an exact copy of the laws of the state of Ohio. This is shown by a portion of the by-laws, which reads as follows:

"Benefits must be limited to the classes named in Section 1 of the by-laws which is a verbatim copy of the laws of Ohio under which we are incorporated."

In 1911, the laws of Ohio were changed, so as to read as follows:

"The payment of death benefits shall be confined to the wife, husband, relative by blood to the fourth degree, father-in-law, mother-in-law, daughter-in-law, stepfather, stepmother, stepchildren, children by legal adoption, or to a person or persons dependent upon the members."

This change in the law of Ohio removed an affianced wife from the class of persons permitted to receive payment of death benefits.

Defendant association, on an interpleading, was ordered to and did pay into court the proceeds of the policy, with interest thereon, and on its motion was discharged from liability.

The Ohio court, in the case of *Brotherhood of Railroad Trainmen v. Taylor,* 29 Ohio Cir. Ct. 171, holds:

"The effect of divorce seems to be to terminate the relation of 'wife' under a mutual benefit certificate, so that if a wife is designated and she obtains a divorce, she loses her right to claim any part of the fund."

And: "Having secured a divorce subsequent to the issuance of the certificate, that fact precluded her from recovering benefits as wife or beneficiary." This is from the syllabus.

It further appears in evidence that the insured did not have the certificate in suit in his possession; that plaintiff, whom Barr charged with having in her possession the certificate, testified upon the trial that she did not have the policy, and that she did not know where the policy was, and did not know what became of it.

Plaintiff bases her right to the avails of the insurance policy which had been paid into court upon conclusions asserted: That J. F. Barr, insured, made no valid change of beneficiary from the plaintiff to Margaret Barr Hopkins, intervener; that there never was a change of beneficiary; that there was no waiver by defendant company; that, upon the death of J. F. Barr, she became vested in her right to the fund; that Barr never did the things which the contract required him to do in order to make change of beneficiary from his former wife to his sister; that, plaintiff being eligible, at the time the certificate was issued, to be a beneficiary under the certificate, she remains the beneficiary

until the certificate has been changed in the manner provided in the by-laws of the order; that the rights of the parties are governed by the laws of the state of Iowa; that, by reason of a re-engagement of marriage, she became eligible to be a beneficiary; that a change of the policy, specifically making her the beneficiary, was not necessary, for the reason that she was the identical person named in the policy, which had never been changed with respect to beneficiary.

Intervener Margaret Barr Hopkins' claims to the avails of the policy of insurance are, and she asserts conclusions under the facts, as follows: That, by reason of the divorce, the plaintiff ceased to be the beneficiary under the policy; that, after the divorce was granted, plaintiff and insured never became engaged to remarry; that, if there was a re-engagement, plaintiff would not be eligible, as affianced wife, to become beneficiary, because the laws of the state of Ohio, after the year 1911, did not include an affianced wife as eligible to become a beneficiary, and the laws of the state of Ohio governed in that matter; that J. F. Barr made an effective change of beneficiary in his policy from Leota W. Thomas, wife, to Margaret Barr Hopkins, sister; that, in attempting to make such change of beneficiary, insured failed to strictly and technically comply with the regulations of the order providing for change of beneficiary, in that he failed to account for his inability to return the old policy, in an affidavit made out on the form furnished from the home office; but that he did everything in his power, under the circumstances, to comply with the rule, and did, in law and equity, effect such change, and effect in equity a transfer of the proceeds of the policy to his sister, Margaret Barr Hopkins.

Intervener Margaret Barr Hopkins further avers that plaintiff, at the time she and insured were divorced, ceased to be beneficiary under the policy, and never afterwards became beneficiary; and that, even if the insured did not make her (Margaret Barr Hopkins) beneficiary, by his attempt to do so, she is the only heir at law of the insured, and for that reason is entitled to the fund in court, arising from the policy.

Intervener W. T. Barr, administrator, asserts claims to the fund in controversy, on the grounds that plaintiff ceased to be a beneficiary upon the granting of the divorce, and never after-

wards became beneficiary by reason of being the affianced wife, if she did become engaged to remarry the insured (which he denies); and that intervener Margaret Barr Hopkins never became a beneficiary, because the attempt of J. F. Barr to make her his beneficiary was not effectual; and that he, as administrator of the estate of J. F. Barr, is entitled to the proceeds of the policy.

Such are the issues made under the facts and conclusions asserted by the three parties claiming the fund. We may properly first take up the matter of procedure.

II.    Intervener Margaret Barr Hopkins, and also intervener W. T. Barr, administrator, assign as error the overruling of intervener Margaret Barr Hopkins' motion to transfer to equity.

1. APPEAL AND ERROR: scope of review: following method of trial in lower court.    After the issues were made up between plaintiff and the interveners, and after the defendant association, under their interpleading, had paid into court proceeds of the policy involved, with interest thereon, and had been discharged from further liability, intervener Margaret Barr Hopkins moved to transfer the case to equity, and the court made the finding and order:

"Parties having agreed to try this case to the court, for that reason motion is overruled. All parties except."

The view of the court as to which forum, law or equity, the case should be heard in, seems a little peculiar. A jury trial had been waived by all parties. The defendant insurance association had paid the avails of the policy into court, on interpleader, and had been relieved of further liability. Intervener Margaret Barr Hopkins had tendered an equitable issue, by alleging facts which, she claimed, supported an equitable assignment to her of the policy, and praying that the court award to her the proceeds of the policy on the ground that, in equity, she was the owner of the policy. The pleading of Margaret Barr Hopkins unquestionably tendered an equitable issue between her and the plaintiff. Plaintiff's counsel recognized that, for he says in his brief:

"There was no equitable issue in this cause, except the allegation of Margaret Barr Hopkins that there was an equitable transfer of beneficiary's right from Leota W. Thomas to Margaret Barr Hopkins."

Plaintiff's evidence was all received by the court upon this

question. The court seems to have recognized that there was an equitable issue tendered by intervener, and that such issue must be heard in equity, for he says in his ruling:

"Parties having agreed to try this case to the court, for that reason motion is overruled. All parties except."

It seems to have been the thought of the court that, if the case was tried to the court without a jury, it would be the same kind of trial as would take place if the case were transferred to equity. The court did, in fact, try the case in exactly the same manner that he would have tried it if he had entered an order transferring the case to equity, and had tried it in equity. It appears from the record, and also from the statement of counsel for plaintiff and counsel for interveners, that no rulings were made by the court on evidence, and that all the evidence offered was received. In that situation of pleading and trial, this court may, we think, entertain the case as one triable *de novo* in this court. It is manifest that intervener Margaret Barr Hopkins was entitled to have the issue which she tendered heard in equity, and that such issue should be first tried out. If this court cannot hear and try the case *de novo* on the record submitted, we must reverse the case and remand it, with direction, anyway, that the issue tendered by intervener be tried in equity. However, we have concluded not to reverse the case on the ground that intervener was denied the transfer of the case to equity, and to try the case *de novo* upon the record presented.

Code Section 3435 provides:

"Where the action has been properly commenced by ordinary proceedings, either party shall have the right, by motion, to have any issue heretofore exclusively cognizable in equity tried in the manner hereinafter prescribed in cases of equitable proceedings; and if all the issues were such, though none were exclusively so, the defendant shall be entitled to have them all tried as in cases of equitable proceedings."

That the pleading of intervener tendered an equitable issue, and that she was entitled to have the case transferred to equity, there can be no doubt. *Elk Point I. C. Dist. v. Bennett Bank*, 168 N. W. 292 (not officially reported); *Olmstead v. Taylor*, 177 Iowa 186. In *Olmstead v. Taylor*, supra, the court said:

"But if, as a matter of law and principle, the equitable issue

disposed of the full controversy, there is nothing left for trial at law, and that would be true in this case. If the defendants succeeded in establishing the allegations of their cross-petition, there was no case left for the plaintiff to dispose of on the law side of the calendar.''

We may try this case *de novo*, because there is an equitable issue. All the evidence offered was admitted, and is now before us. The cause was tried below like an equity cause,—that is, to the court without a jury,—and all the evidence was admitted, and no rulings made. *Irwin v. Deming*, 142 Iowa 299; *McCormick v. Lundburg*, 74 Iowa 558, 560; *Watt v. Robbins*, 160 Iowa 595.

Interveners have assigned errors as in a law case on appeal, and argued same under brief points, and plaintiff has responded to same. However, having decided to try the case *de novo*, we will examine the whole record, so far as required for decision of the case.

III. The first question that logically presents itself is whether or not there was a valid change of beneficiary; because, if the insured, J. F. Barr, by what he did, effected a change in

2. INSURANCE: fraternal beneficiary society: equitable change of beneficiary.

beneficiaries,—that is, if, by what he did, he made his sister, Margaret Barr Hopkins, his beneficiary,—then that disposes of the case. Perhaps we should first inquire whether the plaintiff, who was named in the certificate, had a vested interest in the benefit provided for by the certificate, that could not be disturbed. Unquestionably, she had no vested interest that would be effective against an actual change of beneficiary. We take it that the rule is that, as long as Barr lived, he had the right, so far as plaintiff was concerned, of changing his beneficiary at will. That, as we understand it, is the rule as to change of beneficiary in a certificate of fraternal insurance: that the beneficiary has no vested interest in the benefit provided for by the certificate. *Townsend v. Fidelity & Cas. Co.*, 163 Iowa 713.

There is no dispute in the facts relating to the attempted change of beneficiaries. Barr attempted to make his sister, Margaret Barr Hopkins, his beneficiary, in place of his former wife, the plaintiff. Now, what did he do, and what did he fail to do, and what is the effect, are the pertinent inquiries. There be-

ing no dispute in the facts, it resolves itself into a question of law, under the undisputed facts.

On October 25, 1916, the insured, J. F. Barr, wrote to M. J. Canney, local secretary of the association, as follows:

"I write you a few lines to let you know that I want to have my insurance policy changed from my wife to my sister, Mrs. P. F. Hopkins. Now my wife has the policy in her possession but she says she hasn't. Does it make any difference or do you have to send the old one in. Well write. I had an operation the other day and it came out all right but will have to have another on the other side of my head soon as that one heals up. Now will send you $1.00 in this letter. If that isn't enough, let me know and will make it right."

Answering Barr's letter of October 25, 1916, Canney wrote, on October 29, 1916:

"I have your letter with $1.00 inclosed requesting a new insurance policy. It will be necessary to return old policy. If you cannot get it will have to make a request to me, giving a full explanation about your old policy and the reason it cannot be obtained so I can send it with my request for the change desired also the name in full of the person you want your new policy payable to.

"The grand office will refuse to make the change unless this information is furnished as the insurance laws of the state must be fully complied with. I am glad to hear you are feeling so well after your first operation. I trust you will soon be able to leave the hospital."

Replying to Canney's letter of October 29, 1916, Barr wrote, on October 31, 1916:

"In regard to that policy I do not know whether she has it or not but when we separated looked for it where I kept it and could not find it but found all other papers which I kept with it and I asked her what she done with it and she said she didn't know anything about it or didn't see it but I think she has it and won't own up to it because it could not have got lost so I don't know I can get it or what to do about it. But I do not want her to have it as we are divorced and she is nothing to me. Now the person I want it made out to is my sister, Mrs. Margaret Barr Hopkins."

Section 24 of the constitution and by-laws is as follows:

"Any member wishing to change his beneficiary in his policy or policies can do so by returning, through the insurance secretary of the division to which he belongs, the policy or policies in his possession, with a written request over his own signature, giving full name and relationship of present beneficiary or beneficiaries, and those of the new beneficiary or beneficiaries, who must be in one of the classes designated in Section 1. Being unable to return old policy or policies, duplicates will be granted by member's making affidavit of the facts on a form supplied by the home office, executed before an officer authorized by law to administer oaths, and waiving all benefits or rights to himself and his beneficiaries named in former policy or policies held by him, such change to be effective from the date borne by the request, providing the new beneficiaries are in one of the classes designated in Section 1, for which a fee of 25 cents will be charged for each policy changed."

It will be observed that Section 24 requires, in order to change beneficiary, that the old policy be returned; or "being unable to return the old policy * * * duplicates will be granted by member's making an affidavit of the fact on a form supplied by the home office, executed before an officer authorized by law to administer oaths, and waiving all benefits or rights to himself and his beneficiaries named in the former policy held by him, such change to be effective from the date borne by the request."

All the information required in Section 24 of the by-laws was furnished the insurance secretary in Barr's letter of October 25th. In that letter, he stated his desire to have the beneficiary changed from his former wife to his sister, Margaret Barr Hopkins. He further stated that his former wife (plaintiff) had the policy in her possession, but that she denied having it. He also sent in the fee required, and more. Canney, secretary, on October 29th, acknowledged receipt of the fee, and advised Barr that it would be necessary for him to return the old policy, saying:

"If you cannot get it you will have to make a request to me giving a full explanation about the old policy and the reason it cannot be obtained so I can send it with my request for the

change desired. Also the name in full of the person you want your new policy payable to."

It will be observed that no reference is made in the secretary's letter of any requirement of an affidavit. All the secretary asked for was that Barr should make a request, giving an explanation about the old policy, the reason it could not be obtained, and the full name of the person he desired to receive the money. Barr had given to the secretary, in his letter of October 25th, the name of his sister, whom he desired to have made beneficiary, as "Mrs. P. F. Hopkins;" and in his letter of October 31st, he gave to the secretary the full name, "Mrs. Margaret Barr Hopkins." Barr did not have the policy in his possession. Barr was in the hospital, recovering from a critical operation, and expecting that it would be necessary for him to submit to another operation, which he did. Barr did not have a copy of the constitution and by-laws. He took defendant, through its secretary, M. J. Canney, at its word, and in his letter of October 31st, his last letter, he gave the secretary all the information required of him by the secretary's letter of October 29th. Barr furnished the information, the facts, that the secretary asked him to furnish. He did not furnish the information in the form of an affidavit, as required by the by-laws. The only respect in which the by-laws of the defendant association were not complied with was that the information was not given in the form of an affidavit; the facts concerning the loss of the old policy were not supplied in the form of an affidavit supplied by the home office. The wishes of Barr are clearly and unequivocally expressed in his letters, as to the change of beneficiary. The question remains: Does his failure to explain in an affidavit, as required by the by-laws, the loss of the old policy and his inability to return the old policy, defeat his effort to change his beneficiary from Leota W. Thomas to Margaret Barr Hopkins?

Provisions of by-laws as to the method of change of beneficiary are for the benefit of the association, and it may waive them. Barr had furnished to the association, through its secretary, all the information required by the by-laws as to the certificate. He had stated in his letter of October 25th that he

3. INSURANCE: fraternal beneficiary society: waiver *in re* change of beneficiaries.

could not find the certificate, and that he thought it was in the possession of his former wife. Barr also stated in that letter whom he wanted as his beneficiary. In that letter, Barr stated that he wanted his sister, Margaret Barr Hopkins, to be his beneficiary, instead of his former wife, Leota W. Thomas. It was not required by the by-laws that the name of the changed beneficiary, the name of the person whom he wished to be his beneficiary, instead of the beneficiary named in the present certificate, should be communicated to the association by way of an affidavit. It is only the fact that the old certificate had been lost that the by-laws required to be communicated to the company by way of an affidavit. Having the facts stated as to loss of certificate is a precautionary measure rule, for the protection of the association against having more than one certificate out at once for the same insurance. No person or persons, no one other than the association, is interested or benefited, or can be in any way affected by the manner in which the loss of a certificate shall be communicated to the association, as to whether it shall be in a letter or through an affidavit made on a form furnished by the home office. The secretary, in his letter to Barr telling Barr how to account for the old policy,—the reason it could not be obtained for returning to the association,—said nothing about an affidavit, on a form furnished by the home office or on any other form. He simply wrote Barr:

"If you cannot get it, you will have to make a request to me, giving a full explanation about your old policy, and the reason it cannot be obtained."

After receiving this letter from the secretary, telling him just what to do, just what facts to furnish,—the two things necessary, namely, that the old policy was lost and could not be returned, and the name of the beneficiary that he wanted substituted for Leota W. Thomas, his former wife,—Barr furnished the facts required.

As before stated, the by-law does not require that the communication to the association of the name of the new beneficiary should be in the form of an affidavit; but only the one thing is required by the by-law to be in the form of an affidavit, namely, that the old policy cannot be produced, and the reason why. Now what difference does it make to anybody, except, possibly, the

company, whether the association is told in a letter or in an affidavit that he cannot find his old policy for the purpose of surrendering it and of having a new policy made out in favor of a beneficiary other than the person named in the old policy? Only the one thing is required to be stated in an affidavit, and that is the reason—the facts about why—the old policy cannot be returned. A statement made in an affidavit is of a more solemn character than a mere statement made, not under oath. The requirement of this statement as to loss of policy or why it cannot be returned to the association is not made for the benefit of the beneficiary or the insured. It is entirely for the benefit and purposes of the association.

In the instant case, the association did not quibble, did not make any objection whatever to the noncompliance with any of its by-laws, but paid the certificate avails into court, to be awarded to the one who may be proven the owner.

We think that neither the plaintiff nor the administrator is entitled to object because Barr, in bed, and having undergone one operation and soon having to have another, had notified the association in a plain, clear letter that he could not return the old policy because he did not have it in his possession, and thought his former wife had it, instead of in the form of an affidavit furnished from the home office. *Wood v. Brotherhood of Am. Yeomen*, 148 Iowa 400; *Holden v. Modern Brotherhood*, 151 Iowa 673; *Fischer v. Malchow*, 93 Minn. 396 (101 N. W. 602); *Wandell v. Mystic Toilers*, 130 Iowa 639.

It is announced in many cases that the rule requiring the surrender of a certificate when it is desired by the insured to change his beneficiary, and have a new certificate issued, with another beneficiary named in it, and, in fact, most of the rules with respect to making a change of beneficiaries,—that is, the technical rules of proceeding,—are intended for the benefit of the insurer. *Wood v. Brotherhood of Am. Yeomen*, 148 Iowa 400; *Fischer v. Malchow*, 93 Minn. 396 (101 N. W. 602).

Barr did everything required by the by-laws to change his beneficiary from his divorced wife to his sister, Margaret Barr Hopkins. He did everything necessary to effect a change of beneficiary: that is, he told the association whom he wanted to be beneficiary, and why he could not send in the old certificate.

The only thing wanting was that the information, the fact that he could not obtain the old policy to return it, because his divorced wife, he thought, had it in her possession, was told in a letter, instead of an affidavit. The by-laws say: "On a form supplied by the home office." If Barr had employed someone to write up an affidavit for him, containing the same facts stated in his letter as to why he could not return the old policy, and if such affidavit had not been "on a form furnished by the home office," there would not have been a strict compliance with the by-laws. There would have been a variance, and there would be about as much reason to insist that it was a fatal variance as there is in this case, where the required information was furnished by letter only.

Section 24 of the by-laws provides that any member has a right to change his beneficiary, and that the member should return his old policy to the insurance secretary of the division to which he belongs, making a written request for the change, and giving the name and relationship of the beneficiary to whom the insurance is to be made; that, if the member is unable to return his old policy, he should make an affidavit of the fact on a form supplied by the home office. All the information required in Section 24 of the by-laws of the order was furnished the insurance secretary of the division to which Barr belonged, in Barr's letter of October 25th. In that letter he stated that it was his desire to have the beneficiary changed from his divorced wife to his sister, Margaret Barr Hopkins. He further stated that his divorced wife (plaintiff) had the policy in her possession, but she denied so having it. The fee required was sent. On October 29th, in answer to Barr's letter of October 25th, the insurance secretary acknowledged receipt of the fee for making the change of beneficiary, and advised Barr that it would be necessary for him to return the old policy, and said:

"If you cannot get it [the old policy] you will have to make a request to me, giving a full explanation about the old policy and the reason it cannot be obtained, so I can send it with my request for the change desired."

There is no reference in the secretary's letter to any requirement of the order as to any affidavit on any form of the home office. All the secretary asked Barr for was that he should

make his request, giving an explanation about the old policy, the reason it could not be obtained, and the full name of the person he wanted the new policy payable to. But Barr did not have the policy in his possession. He thought the plaintiff had it. Barr had no copy of the constitution and by-laws. He was a laboring man, on a sick bed. He followed the instructions given him by M. J. Canney, secretary of the company; and in his second written request, Barr gave all the information required of him by Canney, secretary, in his letter to Barr of October 29th. In his former letter, of October 25th, Barr had told the secretary of the change he wanted made, and why he could not return the policy. He did not have the policy. But when he received the secretary's answer to the letter of October 25th, he again wrote him, giving him the information that the secretary told him was required. In his second letter, of October 31st, he is very explicit in his statements concerning the old policy, and why he could not return it, saying that he looked for it when he and his divorced wife separated, and that he could not find it; that he believed his divorced wife had it. In that same letter, Barr said:

"But I do not want her to have it as we are divorced and she is nothing to me. Now the person I want it made out to is my sister, Margaret Barr Hopkins."

The correspondence of Barr with the company through its secretary in the three letters shows clearly that Barr informed the secretary in his first letter that he wanted to change his beneficiary. The secretary answered his letter, and told him what he would have to do to effect a change; and in his second letter, Barr furnished to the secretary the information required by the secretary's letter to him. The secretary said nothing to Barr about the required information's having to be furnished in an affidavit, the form of which must be furnished from the home office. The secretary said nothing about an affidavit of any kind.

It seems to us that the requirement of Section 24 of the by-laws of the defendant order, as to furnishing the information on a blank furnished by the home office, was a rule enacted for the benefit of that order, a rule for the convenience of the officers of the order. This has been recognized by this and other

courts. *Wood v. Brotherhood of Am. Yeomen,* 148 Iowa 400; *Holden v. Modern Brotherhood,* 151 Iowa 673; *Fischer v. Malchow,* 93 Minn. 396 (101 N. W. 602); 29 Cyc. 135; *Wandell v. Mystic Toilers,* 130 Iowa 639. This court said, in *Wood v. Brotherhood of Am. Yeomen,* supra:

"The rule requiring the surrender of the certificate, and for that matter, most of the rules with respect to changing beneficiaries, is intended for the benefit of the insurer."

The Illinois court, in *Delaney v. Delaney,* 175 Ill. 187 (51 N. E. 961), says:

"The provision that a new certificate may be issued upon the surrender of the old certificate is a provision which is made for the benefit of the association."

The Minnesota Court, in *Fischer v. Malchow,* supra, says:

"The rules were made for the benefit of the association, and to protect it, and not beneficiaries or others claiming the money to be paid upon the death of a member."

The law is well stated in 29 Cyc. 135, where the rule is laid down as follows:

"It is generally held that the regulations concerning the method of changing beneficiaries are prescribed for the protection of the society, and that, if the society has, by waiver or estoppel, lost its right to object to a change of beneficiary, no one else may raise that objection."

The provision of the by-law was not made for the benefit of Leota W. Thomas or of W. T. Barr, administrator, but was solely for the convenience and benefit of the association. The requirements of Section 24 of the by-laws were for the association's benefit, and it could waive the strict and literal compliance therewith; and the association did waive the strict and literal compliance therewith by not insisting thereon, and by paying the proceeds of the certificate into court. Barr did comply with the spirit of the requirement, in furnishing all the information which was asked for in the by-laws; only, he furnished such information in a letter, written on his own stationery, instead of in an affidavit on a form furnished by the home office.

Granting that the defendant association would have been estopped to assert a lack of compliance with the by-law, had it cared to urge such objection, it never did urge any objection

4. INSURANCE:
authority of
agent to effect
a waiver.

as to such lack of compliance. The association waived compliance with the technicalities of its by-laws when its divisional secretary, who conducted the business between Barr and the home office, wrote Barr, requesting certain specific information, and made no mention of any affidavit or of any form to be furnished by the home office, and failed to furnish the form. We think there can be no question of Canney's authority to waive the requirements of the by-laws. He was a divisional officer of defendant order. He was the officer who conducted the defendant's business with all the members of defendant order located within his division. The very by-law which it is complained by plaintiff was not strictly complied with, provided that the information to be furnished should be furnished through the divisional secretary. We think that Canney, divisional secretary, had authority to write the letter he wrote to Barr on October 29th, and had authority to waive strict compliance with the by-laws.

The fact that the insurance company brought the money into court, and never claimed that Canney had exceeded his authority, shows conclusively that this officer had and was accorded the power and authority to bind the company. The letter of October 29th from Canney to Barr, and that of October 31st from Barr to Canney, show on their face that specific information was requested in Canney's letter and furnished in Barr's letter in the manner requested. No intimation was made by the secretary, in his letter of October 31st, of any affidavit or any form of affidavit to be used by Barr in making change of beneficiary. Barr gave the secretary the facts, and he gave him all the facts he asked for. Had the insurance company come into this case and denied liability to Margaret Barr Hopkins,—which it did not do,—another issue would have been presented. But that is not the situation in this case. Leota W. Thomas, the divorced wife, who, Barr says, had the policy in her possession, and prevented him from returning it to the company, makes the objection that the by-law of the order was not strictly and literally complied with by accounting for the old certificate in an affidavit written on a form furnished by the home office. We think it does not lie in her mouth to complain because Barr accounted for his inability to return the old policy in a letter, in-

stead of in an affidavit on a form furnished by the home office. By interpleading and by bringing the money into court, the company waived technicalities required in the by-laws. This proposition is recognized in many cases. Supporting this proposition, see *Holden v. Modern Brotherhood*, 151 Iowa 673; *Modern Brotherhood v. Matkovitch*, 56 Ind. App. 8 (104 N. E. 795); 29 Cyc. 136.

The effect of the defendant's depositing the fund in court was to say to the court that it did not care to rely on the technicalities of its by-laws, and desired the court to award the fund to whomsoever the deceased intended should receive it. That is what the company did say, in its petition of interpleader. The defendant company having waived strict compliance with the by-law in the manner of accounting for the old certificate, we think it is established by the authorities that it does not lie in the mouth of Leota W. Thomas or of the administrator to complain of the manner in which the old certificate was accounted for.

The doctrine that no one, as a rule, other than the insurer can assert the provisions of the by-laws is well stated in *Lentz v. Fritter*, 92 Ohio St. 186, 194 (110 N. E. 637), where the Supreme Court of Ohio says:

"It cannot be claimed, however, that a beneficiary named in such a policy or certificate of such association has any vested interest therein until the death of the insured; and hence, in the absence of prohibitory legislation, the beneficiary may be changed at will by the insured, upon a manifestation of his intention and designation of a new beneficiary. * * * *It being true that no one else had a vested interest in this certificate, why should anyone else be permitted to complain of the manner in which it was made?"*

See, also, *Fischer v. Malchow*, 93 Minn. 396 (101 N. W. 602). In 29 Cyc. 136, it is said:

"The society may, in the lifetime of the member, waive provisions in its laws or in the certificate governing the method of changing beneficiaries, or estop itself from insisting thereon, and when it has done so, no one else can, as a rule, take advantage of noncompliance with such provisions."

We think it clear, and an unavoidable conclusion, that

neither the plaintiff nor W. T. Barr, administrator, can be heard to say that intervener Margaret Barr Hopkins is not entitled to recover because J. F. Barr, the insured, instead of furnishing the information of his inability to return the old certificate on a blank to be supplied by the home office, furnished the information in a letter on his own stationery.

The rule in some of the older cases was, and it is the general rule, that a change of beneficiary, in order to be effectual, must be in accordance with the provisions of the by-laws of the insurer; in other words, that the person desiring to have the beneficiary changed must pursue the course pointed out in the constitution and by-laws of the order.

It seems to us that the case before us may well be considered as falling within the rule announced in *Supreme Conclave v. Cappella*, 41 Fed. 1. In that case, there was a request in writing, signed by the insured, that the beneficiary be changed. This request was received by the secretary at the home office, the day before the death of insured. The certificate was not surrendered, as provided by the by-laws of the order, and insured died before surrendering the old certificate, or having a new certificate issued to him. The court held, nevertheless, that there was a valid change of beneficiaries, for the reason that assured had done all that it was within his power to do. This case lays down three exceptions to the rule of strict compliance with the by-laws, which are as follows:

1. Where the society has waived compliance or estopped itself to assert noncompliance.

2. Where it is beyond the power of the member to comply literally with the regulations.

3. If the insured has pursued the course pointed out in the by-laws, and has done all in his power to change the beneficiary, but, before the new certificate is actually issued, he dies, a court of equity will act as if the new certificate had been issued.

Perhaps the *Cappella* case is the leading case on this subject. The facts are nearly identical with those in the case at bar. The old certificate was not surrendered, as required by the by-laws; but the court held that this would not defeat the insured's wishes, for the reason that he had done all within his power to do. In the instant case, did not the insured, J. F. Barr, under his

situation and under the directions given him by the divisional secretary, do all within his power to change his beneficiary from Leota W. Thomas, his divorced wife, to Margaret Barr Hopkins, his sister? It is to be remembered that Barr started to effect a change of beneficiaries 15 days before his death, and that he was in a hospital, and underwent two surgical operations, and that the order, through Canney, secretary, knew that Barr was in a hospital and undergoing a surgical operation. Barr did everything that Canney, secretary, directed him to do. What more could Barr have done in his situation? Did not Barr, in following the written directions of the divisional secretary, in his situation of illness and ignorance of the technical rule provided in the by-law, the technical manner of communicating to the order the reason why he could not return the old policy, accomplish all that lay in his power to do? It may be urged that Barr was bound to know the rule contained in the by-law, that he must account for his inability to return the old policy by making an affidavit, on a form furnished by the home office, of the fact that he thought his former wife had the certificate, and that he was unable to obtain it. Yes, the by-laws of the order are part of the contract of insurance. Barr did not have a copy of the by-laws. Perhaps he should have had. It does not appear whether Canney, secretary, had a copy of the by-laws or not. But Canney assumed to tell Barr exactly what to do to make the change he desired; and Canney said nothing about the rule in the by-law; said nothing about Barr's having to account in an affidavit for his inability to return the old certificate. This man, confined in a hospital, sought the advice of Canney, secretary, and when he received it, followed his directions. Must it be said that, because Barr did not know more about the technical rule in the by-law, on the question of how to account for the old certificate, than Canney, secretary, revealed to him in answering Barr's direct question of what to do, Barr failed to do all within his power to effect a change of beneficiaries? The instant case is different from any of the reported cases, in that the insured asked the divisional secretary just what to do and how to do it, to effect a change of beneficiaries, and religiously followed the secretary's direction, doing not less and not more, but all that the secretary, in his letter of October 29th, explicitly

told him to do. And this was 10 days before Barr died. There was plenty of time for the secretary to have furnished Barr with a form of an affidavit from the home office, on which he could make an affidavit. But Barr knew nothing about this requirement of an affidavit. The secretary probably did, but he evidently thought the requirement not absolutely necessary, and that it might be waived by the company. Anyway, he did waive it for the company. He did all he could to waive it for the company by assuming to tell Barr just what to do, without mentioning an affidavit on the company's form or any other form. Under Barr's situation, it was clearly beyond his power, we think, to literally comply with the regulations, but he did comply with them so far as it was within his power to do.

It may be conceded, as appellee contends, that the general rule is that a strict construction should be given to the rule of law for making change of beneficiary. Appellee has cited cases in support of that theory, and there are numerous decisions of many courts which, in substance, hold that, where the by-laws or constitution of a mutual benefit society provide a method of making a change of beneficiary, that method must be pursued by a member in making such change or designation. While that is true, there are well-defined exceptions to the general rule, as set forth in the *Cappella* case and in 29 Cyc. 133, above quoted, and other cases. *Holden v. Modern Brotherhood*, 151 Iowa 673; *Wandell v. Mystic Toilers*, 130 Iowa 639; *Wood v. Brotherhood of Am. Yeomen*, 148 Iowa 400; *Hayden v. Modern Brotherhood*, 173 Iowa 395; *Simcoke v. Grand-Lodge*, 84 Iowa 383; *Schmidt v. Iowa K. P. Ins. Assn.*, 82 Iowa 304; *Townsend v. Fidelity & Cas. Co.*, 163 Iowa 713; *Adams v. Police & F. Ins. Assn.*, 103 Neb. 552 (172 N. W. 755); *Robinson v. Robinson*, 121 Ark. 276 (181 S. W. 300); *Modern Brotherhood v. Makovitch*, 56 Ind. App. 8 (104 N. E. 795); *Fischer v. Malchow*, 93 Minn. 396 (101 N. W. 602); *Allgemeiner Arbiter Bund v. Adamson*, 132 Mich. 86 (92 N. W. 786); *Grand Lodge v. Child*, 70 Mich. 163 (38 N. W. 1); *Marsh v. Supreme Council*, 149 Mass. 512 (21 N. E. 1070); *Grand Lodge v. Noll*, 90 Mich. 37 (51 N. W. 268).

The holding in the recent case of *Taylor v. Grand Lodge*, (N. D.) 178 N. W. 130, supports the exceptions to the general rule. There, the by-laws of the order provided that the benefici-

ary might be changed by filling out the blank form on the back of the certificate, having the signature of the insured attested by the recorder of the lodge, and the seal of the lodge attached thereto, and by delivering the certificate, with the form properly filled in, to the recorder of the lodge, with a fee of 50 cents. The insured filled out the blank form, but the signature was not attested by the recorder of the lodge nor by anyone else, nor were the other requirements of the by-laws complied with. Furthermore, the certificate, with the insured's request for a change, was not delivered to the insurance order, nor was the insured's intention of requesting the change made known to the order until after the death of insured. The court said:

"In this case, however, the lodge makes no complaint. So far as it is concerned, it assumes sufficient compliance with the regulations providing for the change of beneficiary has been accomplished. It does not object that compliance with its regulations has not taken place. It brings the money into court, and is willing that such beneficiary shall have it as the court may say is entitled to it. We think, therefore, the lodge has waived any failure of compliance with its regulations in regard to the change of beneficiary. * * * In cases such as this, no iron-clad rule can be enunciated. The most and best that can be said in such a case is that, if the insured has done all in his power to comply with the regulation of the order, in such a matter as designating a change of beneficiary, but has not done all that the order requires, and it is equitable to give effect to his partially completed efforts to make such change, and if it plainly would result in great injustice if his partially completed acts were not regarded as completed, equity should regard that as done which ought to have been done; and we think that condition applies to this case, for equity is with the plaintiff."

We are constrained to hold that Barr did all within his power to effect the change of beneficiary in the insurance certificate from Leota W. Thomas, his former wife, to Margaret Barr Hopkins, his sister, and that what he did effectuated such change, and made out an equitable transfer of the fund in controversy to intervener Margaret Barr Hopkins.

IV. Another issue of law, the facts being undisputed, is presented by the claim of plaintiff that she is entitled to the

fund in controversy, based on the theory that a beneficiary desig-
nated in a life insurance certificate valid in its
inception remains valid, although the insurable
interest may have terminated; and that this
rule controls in case of a divorced wife; and that she is entitled
to the proceeds of the certificate, unless there has been an actual
change of beneficiary. Plaintiff cites cases from our court and
other courts to sustain her position. *White v. Brotherhood of
Am. Yeomen,* 124 Iowa 293; *Schmidt v. Hauer,* 139 Iowa 531;
*Brown v. Ancient Order U. W.,* 208 Pa. 101; *Overhiser v. Over-
hiser,* 14 Colo. App. 1 (59 Pac. 75); *Courtois v. Grand Lodge,*
135 Cal. 552 (67 Pac. 970).

*5. INSURANCE:
effect of divorce
of beneficiary.*

On the other hand, intervener Margaret Barr Hopkins con-
tends that, where a certificate of fraternal benefit insurance is
made payable to a person as *wife,* when she ceases to be wife she
no longer remains the beneficiary, and removes herself from the
class of persons entitled to receive the proceeds. Supporting her
position, see Acts of the Ohio General Assembly 1911 (Code
Title 9, Division 3, Subdivision 1, Chapter 4, Section 9463);
*Tyler v. Odd Fellows M. R. Assn.,* 145 Mass. 134 (13 N. E. 360);
*Bush v. Modern Woodmen,* 182 Iowa 515; *Brotherhood of Rail-
road Trainmen v. Taylor,* 29 Ohio Cir. Ct. 171; *Giffin v. Grand
Lodge,* 99 Neb. 589 (157 N. W. 113); *Dahlin v. Knights of Mac-
cabees,* 151 Mich. 644 (115 N. W. 975); *Green v. Green,* 147
Ky. 608 (144 S. W. 1073, Ann. Cas. 1913 D, 683); *Lawson v.
United Benev. Assn.,* (Tex. Civ. App.) 185 S. W. 976.

It is an accepted proposition that a fraternal benefit insur-
ance corporation has no power to create a fund for persons other
than the class specified in the law authorizing its organization
and maintenance, and that the fund will not be paid outside of
such class. The Ohio statute which was pleaded by intervener
provides:

"The payment of death benefits shall be confined to the wife,
husband, relative by blood to the fourth degree, father-in-law,
mother-in-law, daughter-in-law, stepfather, stepchildren, children
by legal adoption, or to a person or persons dependent upon the
member."

It will be observed that, by its wording, the Ohio statute
confines the payment of death benefits to the wife and others, not

including a divorced wife. The Ohio statute differs from the Iowa statute in this respect,—the Ohio statute reads that the payment of death benefits shall be confined to persons of a certain class. Payment to persons outside of the classes enumerated in the Ohio statute would be a violation of the law of the state which gave defendant company the right to exist. The Iowa statute, Code Section 1824, provides:

"No fraternal association created or organized under the provisions of this chapter shall issue any certificate of membership to any person under the age of fifteen years, nor over the age of sixty-five years, nor unless the beneficiary under said certificate shall be the husband, wife, relative, legal representative, heir or legatee of such member."

The Iowa statute merely says that no membership *shall be issued* to any person unless the beneficiary is in the class therein mentioned, while the Ohio statute *prohibits the payment* of death benefits to any person unless he belongs to the class therein mentioned. This distinction has been recognized by the courts. *Bush v. Modern Woodmen,* 182 Iowa 515. In the *Bush* case, the insured sought to name as beneficiary a niece by marriage. In a contest over the proceeds of the insurance, we held that the person sought to be made beneficiary was not entitled to recover, for the reason that the defendant corporation had no power to create a fund for persons other than the class specified in the law authorizing its organization and maintenance. We said:

"It is almost the universal holding that a society of this kind can waive the enforcement of a requirement embodied in the by-law; but it is elementary that a corporation such as this has no power to create a fund for persons other than the class specified in the law authorizing its organization and maintenance; and, as the corporation has no authority to create a fund for any other purpose, a member cannot direct that the fund be paid to a person outside of such class."

It is to be noted that the defendant order in the *Bush* case was an Illinois corporation. In that case, we further said:

"The statute of Illinois is the organic law of this society. It is under this law that it lives, moves, and has its being. From this law it gets its right to do business, and by this law it is regulated and controlled. It must be borne in mind that, as to

these societies, the purpose and intent of the legislature, in creating and recognizing them, is not that they may do a general insurance business, but a fraternal business. It has been recognized that there lies in the legislature the power to limit the class which may be beneficiaries of the society. We take it that those who join these societies and receive certificates therein, do this in recognition of this reserved power in the legislature from which the society gets its life, and under whose restrictions it operates its business. It does not lie in the power of the society to make by-laws in conflict with the organic law under which it exists. The society could not, in the first place, have made eligible as beneficiaries those who, under the organic law, were not eligible to be beneficiaries.''

It will be observed that the court lays no stress upon the place where the contract was made, but emphasizes the provisions of the law under which the society is organized, which provisions become a part of every contract into which the society enters. The defendant company is bound by the Ohio law, just as the court held in the *Bush* case that the society was bound by the laws of Illinois; for it was under that law that it lived, moved, and had its being.

The insurance certificate in the instant case provided that the proceeds were payable to ''Leota W. Barr, *wife,* or to the insured's lawful heirs.'' It appears without dispute that the plaintiff and the insured were divorced in April, 1908. She was the plaintiff in the divorce proceeding. Upon being divorced, plaintiff ceased to be the *wife* of insured. It is the position of intervener Margaret Barr Hopkins that the proceeds could not be paid to Leota W. Barr, *wife,* as the policy itself provided, because Leota W. Barr, by her own act, had removed herself from the class of persons permitted to receive payment of death benefits under the laws of the state of Ohio.

Plaintiff relies upon *White v. Brotherhood of Am. Yeomen,* supra, and *Schmidt v. Hauer,* supra, for her right to recover as the divorced wife of insured; and these cases seem to support her position. We are inclined to think, however, that these cases may be distinguished, by reason of the difference in the Ohio and Iowa statutes. The statutes of Iowa limit the class of persons who may become beneficiaries, and do not limit the class of per-

sons to whom payment of benefits shall be confined, as does the Ohio statute. In the *White* case, and also in the *Schmidt* case, we referred to the *Tyler* case with approval, but did not consider it in point. In the *Schmidt* case, we said:

"There, the divorced wife of the member, named as bene-. ficiary in the policy, was denied a recovery, but on the ground that the statutes of the state governing fraternal insurance associations, under which statute the defendant there charged was organized, as well as the laws of the association, forbade *payment of benefits* except 'for the purpose of defraying the expenses of the sickness and burial of its members, and rendering pecuniary aid to the families of deceased members, or to their heirs.' "

The facts of the *Tyler* case are precisely the same as the facts in the case before us. The controversy in the case was between the divorced wife, who, prior to the divorce, had been named as beneficiary, and the only heir at law of insured. The by-laws of the association provided that the benefits should be paid to the family of deceased persons or to their heirs. The Massachusetts court held that the divorced wife was precluded from claiming benefits, because she was not within the class of those intended to be benefited, as shown by the by-laws of the association and the statutes of the state of Massachusetts, under which the association was organized. The Massachusetts statute provided that such corporation should be formed for the purpose of "assisting widows, orphans, or other relatives of deceased members, or any person dependent upon deceased members." The Massachusetts court said:

"Assuming, then, but not deciding, that the validity of a designation is to be determined at the outset, with reference to the relationship then existing between the member and his beneficiary, we think, to make it available after his death, there must then be a relation to the deceased such as is contemplated by the agreement of association and the by-laws relating to payment; and this view is strengthened by a consideration of the statute under which the corporation was organized."

The *Tyler* case was really approved by us in the *White* case and the *Schmidt* case; but we said in the *Schmidt* case it was not in point, for the reasons there stated.

A divorced wife is not included among the classes to which benefits are payable, the Ohio statute specifically providing that "the payment of death benefits shall be confined to the wife, husband," etc.   The holding of the Ohio court is in conformity with this view.  *Brotherhood of Railroad Trainmen v. Taylor,* 29 Ohio Cir. Ct. 171.  This is the case which is pleaded and introduced in evidence upon the trial by intervener Margaret Barr Hopkins.  The Ohio court in this case held that, upon the granting of a divorce, the divorced wife ceased to be a beneficiary.  In the course of the opinion, the following is quoted from *Overhiser v. Overhiser,* 14 Colo. App. 1 (59 Pac. 75) :

"It will be seen at a glance that there is a wide distinction between a requirement that a certificate shall issue to only one of a certain class of persons, and .one that payment can be made to only one of a certain class."

This we deem pertinent to the discussion at hand.  This case makes clear the distinction between the Iowa statute and the Ohio statute.  In the *White* case, which plaintiff largely relies on, the insurance corporation was organized under the laws of Iowa, and was governed by the laws of Iowa in the payment of benefits.  In that case, there was no attempt on the part of the member to change the beneficiary, following the divorce, and in that case, the wife was named as the beneficiary in her individual capacity, and not as *wife,* as was the plaintiff in the case at bar.  In the opinion, we refer to the rule contended for by counsel for plaintiff in the instant case, and then we say :

"This rule has been held not to obtain, however, where the beneficiaries are restricted to the family, relations, or dependents, as was the case in *Tyler v. Odd Fellows M. R. Assn.,* 145 Mass. 134 (13 N. E. 360), relied upon by the appellee.  There it was stipulated that payment should be made to the person designated by the member, 'provided such person was an heir or member of decedent's family.'  This limitation was held to be controlling, and the wife, who was named as beneficiary and had been divorced, not being an heir or member of the family of the deceased at the time of his death, was held incompetent as beneficiary, and recovery was for that reason alone denied.  *Had the certificate before us been in terms payable to the wife or to the widow of the deceased, we think a divorce would have*

*excluded the then wife, because of the absence of such relationship at the time of death; but we have an entirely different case to deal with.''*

In the instant case, the law of Ohio, as well as the constitution of the order, restricted the payment of benefits to those belonging to the classes named; and plaintiff does not fall within any of the classes of persons permitted to receive payment of benefits, either under the law of the corporation or the constitution of the order. In the *Schmidt* case, relied upon by counsel for plaintiff, the defendant order was an Iowa corporation; and, as we have already noted, the statutes of Iowa merely limit the classes of persons who may become beneficiaries, and do not name the classes of persons who are permitted to receive payment of death benefits, or *prohibit payment* to others than the members of those classes. In the *Schmidt* case, there was no attempt at change of beneficiaries, as there was in the case at bar. The *Tyler* case, from the Massachusetts court, is identical in its facts with the instant case. The holdings in the two cases cited from our court and relied upon by plaintiff, the *White* case and the *Schmidt* case, do not disagree with the holding in the *Tyler* case, for the reason that the Massachusetts law, under which the corporation was organized, forbade payment of benefits to any except the classes named. So, in the instant case, the Ohio law forbids payment of benefits to any except the named classes. Since the plaintiff falls outside of any of the named classes, the *Schmidt* case is clearly not in point as authority for plaintiff's contention, and we there so say. In the instant case, we hold that the divorce defeats plaintiff's recovery, even if there was not an effectual change of beneficiary.

V. In the pleadings and evidence, there is presented another issue of fact and law, by the claim of the plaintiff that, after she obtained a divorce from the insured, she and insured again became engaged to be married, and that she is entitled to recover as an affianced wife. Plaintiff offered testimony tending to show a re-engagement. Even conceding that plaintiff was engaged to be remarried to the insured, that would not entitle her to recover, because she was designated as beneficiary as the *wife* of insured. She ceased to be his wife by divorce, and was never again designated as beneficiary. In such a case, there

must be not only a promise to marry, but a new designation of the affianced wife as the beneficiary of the policy. *Green v. Green*, 147 Ky. 608 (Ann. Cas. 1913 D, 683).

VI. The claim of intervener W. T. Barr, administrator, to the fund in controversy may be disposed of by adverting to the certificate upon the life of J. F. Barr, which provides:

6. INSURANCE: administrator's right to avails. "All payments that may accrue or become due by virtue of this certificate will be payable to Leota W. Barr, wife, or *insured's lawful heirs*."

It is here to be observed that the policy provides for payment in the alternative to the lawful heirs of J. F. Barr. It does not provide for the payment to the administrator of his estate, but to his heirs. It follows that, if the heirs are to be awarded this fund, they must recover as beneficiaries, and not by descent. The intervener W. T. Barr, administrator, claims this fund, not as trustee for the heirs, but in his official capacity, as administrator of the estate of J. F. Barr, as assets of his estate. Intervener Margaret Barr Hopkins, without dispute in the record, is the only heir at law of J. F. Barr, deceased, and she is in court claiming this fund; and we hold that she is entitled to same as such heir.

The decree of the lower court is reversed, and cause is remanded for decree in harmony with this opinion, or decree may be entered in this court.—*Reversed and remanded.*

EVANS, C. J., WEAVER, STEVENS, and FAVILLE, JJ., concur.