FRANCK v. EQUITABLE LIFE INS. CO. et al.

No. 14708.

United States Court of Appeals Eighth Circuit.

April 17, 1953.

474

Howard L. Bump, Des Moines, Iowa (Clarence I. Spencer, Des Moines, Iowa, on the brief), for appellant.

John Paul Jones, Des Moines, Iowa (William H. Fulton, Louisville, Ky., on the brief), for appellees Clara Dipple Hyland and William L. Hyland.

Joseph A. Boyer, Boston, Mass., for appellee Cambridge Trust Co., administrator C.T.A. of the Estate of Daisette McKenzie, deceased.

Before SANBORN, RIDDICK and COLLET, Circuit Judges.

SANBORN, Circuit Judge.

The Equitable Life Insurance Company of Iowa on March 9, 1951, issued to Minnie E. Hyland a refund annuity contract, called a "supplementary contract." By its terms, she was to be paid during her lifetime $62.25 monthly, and if at the time of her death the total of the monthly payments made to her did not equal $7,437.67, the value of a matured policy, her niece, Helen H. Franck, was thereafter to receive the monthly payments until the $7,437.67 was exhausted. The contract also gave to Helen H. Franck, as the contingent beneficiary, the right to withdraw the commuted value of all remaining monthly payments after the death of the annuitant.

The contract contained the following provision relative to changing the contingent beneficiary:

"The Said Minnie E. Hyland shall have the right to designate (with the right to change such designation) another person or persons to receive any remaining Refund Annuity payments under this Supplementary Contract at the time of her death. Such designation shall take effect upon notice in writing to the Company at its Home Office and endorsement on the Supplementary Contract by the Company at its Home Office, but upon such endorsement the designation will relate back to and take effect as of the date the said Minnie E. Hyland signed said written notice whether the said Minnie E. Hyland be living at the date of such endorsement or not, but without prejudice to the Company on account of any payment made by it before receipt of such written notice at its Home Office."

Minnie E. Hyland, who was an unmarried woman seventy-five years of age, died at her home in Des Moines, Iowa, on January 31, 1952. At that time the balance remaining due under the annuity contract was $6,752.92 if payable in installments, and $5,807.64 if the payments were commuted. A controversy arose as to who was entitled to the benefits of the contract. Helen H. Franck claimed that she was still the contingent beneficiary. Clara Dipple Hyland and her son, William L. Hyland, distant relatives of Minnie E. Hyland, claimed to have been made sole contingent beneficiaries. Daisette McKenzie, a citizen of Massachusetts, claimed that she had been made the beneficiary for life of the remaining monthly payments.

The Company, having no interest in the controversy between these adverse claimants except to protect itself and to ascertain to whom it was obligated to make payments under the contract, brought this action in interpleader, naming the adverse claimants as defendants. They appeared and stated their respective claims in appropriate pleadings.

The District Court, after a trial, determined that Minnie E. Hyland, by a letter which was written January 27, 1952, and received by the Company prior to her death, had (1) revoked the designation of Helen H. Franck as contingent beneficiary under the contract, (2) substituted Daisette McKenzie as payee to receive during her lifetime the monthly payments provided for in the contract, and (3) designated Clara Dipple Hyland and William L. Hyland to re-

ceive any payments which might remain after the death of Daisette McKenzie. On August 14, 1952, judgment was entered accordingly. From this judgment, Helen H. Franck appealed, as did also the two Hylands, who were objecting to so much of the judgment as gave Daisette McKenzie a life interest in the contract. She died on October 10, 1952, and the Hylands thereafter dismissed their appeal. 201 F.2d 368.

What we are called upon to decide is whether the determination of the District Court that Minnie E. Hyland during her lifetime had effectively revoked the designation of Helen H. Franck as contingent beneficiary under the contract in suit and had substituted the Hylands is clearly erroneous under Iowa law.

It appears from the evidence that Minnie E. Hyland early in 1951 induced her niece, Helen H. Franck, to give up a position as resident director at a fraternity house at Iowa State College in Ames, Iowa, and to come to Des Moines to help her aunt, who had a large house in which she was living alone. Minnie Hyland told Helen Franck that if she would come to help her, she (Helen) would be taken care of. Helen arrived on March 15, 1951, six days after Minnie Hyland had, without Helen's knowledge, named her as contingent beneficiary in the annuity contract. Helen was paid $70.00 a month by Minnie Hyland for about 7½ months, and was told by Minnie that she would be taken care of later. Helen lived with Minnie Hyland until November 1, 1951, when she was obliged to assist her daughter, who was having a child. She returned several times after that and cleaned up Minnie's home and was in and out of Minnie's house after November 1. Helen did not know about the annuity contract. Her aunt did not discuss private affairs with her.

On Sunday, January 27, 1952, a letter signed by Minnie Hyland was written to John Hilmes, a soliciting agent for the Equitable Life Insurance Company of Iowa. His office was in the Equitable Building in Des Moines, where the Home Office of the Company was also located. Hilmes had known Minnie Hyland as a policy holder for

about fifteen years. The letter to Hilmes read as follows:

"Dear Mr. Hilmes:

"I am sorry to have to ask for a change in the present reading of this policy and will be so appreciative of your making it for me.

"When Helen Franck came to be with me I had thot she would probably stay on with me, so long as I had need for her. We had a happy time together, but I sense that she cannot stay on; she came to be with me that she might be earning some money and be near her daughter, who was expecting a baby in November.

"She has been with her daughter and family ever since the baby came and now she is expecting to go back to her old work. She has had charge of the management of two lovely hotels and both fraternity and sorority houses in Ames and Drake. Since she is not going to stay on with me indefinitely I feel this calls for a change in my plan of the policy. Bill and Clara are beneficiaries of one policy; I should like to have Daisette McKenzie made the beneficiary of the second policy so long as she lives; then I wish this second policy also to be made payable to Bill and Clara.

"As soon as this change can be made I shall be glad to have it done and receive back the policy.

"Gratefully yours,
"(signed) Minnie E. Hyland"

It is conceded that the letter referred to the annuity contract in suit, and that the "Bill and Clara" named in the letter were William L. Hyland and Clara Dipple Hyland. The letter was mailed late Sunday afternoon. The envelope was post-marked "Des Moines, Iowa, Jan. 28, 1:30 PM 1952." On that day, W. C. Hoffman, who had been the attorney for Minnie E. Hyland for twenty-five years, was called to her house by Clara Hyland, who said that Minnie was sick and wanted him. His office was about half a mile from Minnie's home. He arrived about 2:00 p. m. and found Minnie in

bed and in poor physical condition, with a nurse in attendance. Minnie told him that she would be unable to carry on her business and wanted him to act for her. He advised her that it would be necessary for him to have a power of attorney. There were two things that she wanted cared for immediately. She wanted to change her will and to change the beneficiary in the annuity contract. Minnie told Hoffman that Helen Franck was named as alternate beneficiary, but that she (Minnie) had severed her connection with Helen Franck and had written a letter to Hilmes changing the beneficiary from Helen Franck to Daisette McKenzie, and that she (Minnie) wanted that changed and wanted "Clara and Billy" substituted. Hoffman told Minnie that the change could be made if she would execute a power of attorney, which he then prepared. She signed it in his presence. She told him to contact Hilmes and to see to the changing of the beneficiary. Minnie said to Hoffman that "Clara had come to the house and taken care of her and for that reason she wanted Clara and her son Billy substituted as beneficiaries."

Hoffman drew a codicil to Minnie Hyland's will. He returned to his office about 4:00 o'clock. He then called Hilmes and told him that he (Hoffman) was attorney for Minnie Hyland, and that he had a power of attorney from her and desired to change the beneficiary in one of her annuity contracts. Hilmes told him that Hoffman's instructions were contrary to the instructions which Hilmes had received from Minnie in a letter. Hilmes also told Hoffman that he could not change the beneficiary under a power of attorney. Hoffman insisted that he could, and demanded a change of beneficiary blank. Hilmes called Hoffman the next day, saying that he had talked to the Legal Department of the Company, and that the only way the beneficiary could be changed would be for the annuitant to personally sign the necessary form. Hoffman again demanded a change of beneficiary blank. Hilmes said he would have the blank in the mail that night (January 29) or would bring it over the next day. Hoffman called Hilmes twice the following day, but he was out. Hoffman did not receive any form for

change of beneficiary, although such a form was prepared by the Company before Minnie's death, but was never signed by her. If signed, the form would have made Clara and William Hyland the sole contingent beneficiaries, and would have eliminated Helen Franck and Daisette McKenzie as such. Hoffman did not go to Hilmes' office or to the Home Office of the Company to secure a change of beneficiary form.

The testimony of Hilmes differed in some respects from that of Hoffman. Hilmes testified that he received Minnie E. Hyland's letter in the regular course of the mail; that he thought it arrived on January 29, and that he sent it right upstairs, meaning to the Home Office of the Company; and that he was positive he had not received the letter when he had the conversation with Hoffman about the power of attorney and the possibility of Hoffman's effecting a change of beneficiary to carry out Minnie Hyland's request to have Clara and William Hyland made sole beneficiaries. Hilmes also testified that Hoffman advised him that "Minnie Hyland didn't want to go ahead with the contents of the letter." The annuity contract was not delivered to the Company for endorsement, and no change of beneficiary was endorsed upon it. The record is silent as to who had the contract. The letter of January 27, 1952, would seem to warrant an inference that the contract was available to Hilmes.

As the prevailing parties, the Hylands are, of course, entitled to the benefit of all the inferences which reasonably can be drawn from the evidence, viewed in the light most favorable to them.

It is apparently the law in Iowa that where it appears that an insured clearly intended to change the beneficiary named in a policy of insurance permitting such a change, and that prior to his death he gave written notice to the insurer of the change intended, the law will give effect to the change although the insured has not complied with all of the formalities specified in the contract for effecting a change of beneficiary, provided his failure in that regard was excusable under all the circumstances. In other words, proof of clear intent, plus

written notice to the insurer prior to death, appears to be enough, under Iowa law, to effect the desired change, where the failure to meet all requirements is excusable. This we gather from the recent case of Isgrig v. Prudential Insurance Co. of America, 242 Iowa 312, 318–319, 45 N.W.2d 425, 428.

 We dealt with a problem very similar to this in Doering v. Buechler, 8 Cir., 146 F.2d 784, which is cited with approval in the Isgrig case. In the Doering case, which was governed by Minnesota law, the trial court had held that written notice of a change of beneficiary in a life policy given by an insured prior to his death became effective although the policy was not made available to the insurer for endorsement of the change and no endorsement was made. What we said in that case is equally applicable to this case, 146 F.2d at page 788:

> "We think that the appellant has failed to demonstrate that the applicable Minnesota law is not what the District Court believed it to be. 'In deciding what the highest court of a state would probably hold the state law to be, great weight may properly be accorded by this court to the view of the trial court. * * * This court would be justified in adopting a contrary view only if convinced of error. * * *' Magill v. Travelers Ins. Co., 8 Cir., 133 F.2d 709, 713. We are not convinced of error, and we think that the District Court's conclusion as to the applicable law is in all probability correct."

See, also, Buder v. Becker, 8 Cir., 185 F.2d 311, 315, and cases cited.

In the instant case the intent of Minnie E. Hyland to revoke the designation of Helen H. Franck as contingent beneficiary and to designate the Hylands as beneficiaries was clearly established, as was also the giving of written notice to the Equitable Life Insurance Company of Iowa of that intent. Whether Minnie E. Hyland's attempt to amend the written notice of change of beneficiary by eliminating Daisette McKenzie as one of the contingent beneficiaries was abortive, as the District Court ruled, it is unnecessary to decide. We think the court was justified in ruling that the written

notice given by the annuitant was effective and that, under the circumstances disclosed by the evidence, she did all that was required to eliminate Helen H. Franck as contingent beneficiary and to give Clara and William Hyland the beneficial interests in the annuity contract specified in the letter of January 27, 1952.

This we think is clearly a case where the considered views of the District Court with respect to a question of Iowa law should be accepted by this Court.

The judgment appealed from is affirmed.