[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. History of the Case
On August 7, 1992, the plaintiff, Robert Engleman, executor of the estate of Ella Ryder, brought an action in three counts seeking the proceeds of a $100,000 insurance policy on the life CT Page 4095-FF of Ella Ryder and other damages. Plaintiff's revised complaint contained a count for breach of life insurance contract, a count claiming the defendant's refusal to bring an interpleader action with respect to the proceeds as "unreasonable and arbitrary", and a count for violation of the Connecticut Unfair Insurance Practices Act and the Connecticut Unfair Trade Practices Act.
The plaintiff sought money damages on all three counts and in his prayer for relief addressed to the first count also claimed "a declaratory judgment". The plaintiff likewise claimed a "declaratory judgment" with reference to the second count. The case was tried to the court, Anthony V. DeMayo, on December 9 and 10, 1993 On November 22, 1993 the trial court filed a Memorandum of Decision entering judgment for the defendant on all counts.
The plaintiff took a timely appeal to the Appellate Court on January 11, 1994. On June 6, 1995, the Appellate Court released a decision in which it did not address the merits of the appeal but concluded: "Because Zink was not a party to this action and did not have reasonable notice thereof, the trial court was without subject matter jurisdiction over the action." 38 Conn. App. 134,138-139. The Appellate Court remanded the case to the Superior Court for further proceedings. Following the remand, the plaintiff filed an amended complaint dated October 30, 1995 which was identical in all respects to the December 17, 1992 complaint except for the removal of the claims for declaratory judgment from the prayer for relief.
Following remand, the defendant moved the court to "reissue the original decision and rerender the original judgment." The defendant, relying on a portion of the Appellate Court decision which stated "Once there has been compliance with section 390(D) the trial court will have plenary authority to render whatever judgment it then deems appropriate", argued that the Appellate Court reversal related only to the declaratory judgment issue and that Judge DeMayo's decision as to the other issues should be reinstated.
The "plenary authority" theory first appears, without further explanation, as part of the Connecticut Supreme Court remand of a declaratory judgment in Serrani v. Board of Ethics, 225 Conn. 305
(1993), at 310. It was further amplified in Mannweiler v.LaFlamme, 232 Conn. 27, 36 (1995). In Mannweiler at page 27, note 11, the court describes a procedure which directs: CT Page 4095-GG
 If, however, such owner joins but does not request such a new trial, or if no such owner joins as a party, the trial court after giving the parties the opportunity to be heard, will be free either (1) to reissue the decision and rerender its original judgment, or (2) proceed to hear the case anew if it entertains doubt about the original judgment.
Upon remand, this court (Booth, J.) chose not to refer the matter to Judge DeMayo. Both this court and Judge DeMayo were uncertain whether the remand procedure described in Mannweiler
was available in the instant case or was only available when specifically directed by the remanding court. Further, this court, because of uncertainties as to the procedure to be followed, chose to deny the defendant's motion to reinstate Judge DeMayo's earlier decision and elected to proceed to hear the case anew. Following the court decision in that regard, the parties agreed that this court could decide the case on the transcript which had been considered before Judge DeMayo and that this court would consider all briefs that were before Judge DeMayo or that were before the Appellate Court. The parties further specifically agreed that the request for declaratory judgment had been removed and that all necessary parties to render a decision were before this court. The court held oral argument on the case.
Facts
There is no serious dispute concerning the facts to be found by the trial court in the instant case. In 1961 Connecticut General issued policy #1020625 insuring the life of Ella Ryder for $100,000. The policy provided that "The company agrees to pay the face amount of this policy to the beneficiary upon receipt of due proofs of the death of the insured during the continuance of the policy." The policy further provided:
 A new beneficiary may be designated from time to time by filing at the home office a written request therefore on a form satisfactory to the company and signed by the owner. . . . No change of beneficiary shall take effect until such change shall have been recorded in writing by the company.
The policy does not explain or define the term "a form satisfactory to the company" or "recorded in writing by the company."
Mrs. Ryder's husband, Ralph Ryder, was named as primary CT Page 4095-HH beneficiary and owner of the policy. Her nephew, Philip Zink, was listed as contingent beneficiary.
Ralph Ryder died in 1973. As her husband's executrix, Ella Ryder became owner of the policy with the power to change the beneficiary. In 1976 she attempted unsuccessfully to obtain a change of beneficiary form for the policy through her agent. In 1977 Mrs. Ryder asked her attorney, Mr. Engleman, to revise her estate plan. To conform her insurance with the new estate plan, Mrs. Ryder wrote to Connecticut General in February 1978 asking the company to prepare a change of beneficiary form naming the executors or administrators of her estate as beneficiary. There is no evidence that the defendant sent Mrs. Ryder the requested form.
In January of 1979 Mr. Engleman, on behalf of Ella Ryder, wrote to Connecticut General an unequivocal letter changing the beneficiary of the policy from Mr. Zink to the executor of her estate. The letter was dated, signed by Mrs. Ryder, and witnessed by Attorney Engleman. It expressed Mrs. Ryder's intention that Connecticut General change her beneficiary immediately.
The defendant received Mrs. Ryder's letter and placed it in her policy file but did not "record" the change of beneficiary. Instead it sent Mr. Engleman its own change of beneficiary form, with a cover letter which stated: "All forms must be dated, signed, witnessed and returned to us. Until this is done, the change you have requested cannot be made." Mr. Engleman testified that he transmitted the change of beneficiary form to Mrs. Ryder at her winter home in Florida. There is no evidence whether Mrs. Ryder received the form. Neither Mr. Engleman nor Connecticut General ever received the completed form from Mrs. Ryder and neither confirmed whether Mrs. Ryder had ever received the form, completed it, or attempted to return it to the defendant. There was no evidence that Mrs. Ryder did anything after the letter of January 1979 to show that she had changed her mind about making her estate the beneficiary.
Mrs. Ryder lived eleven more years continuing to pay policy premiums. Following Mrs. Ryder's death, Mr. Engleman as executor of her estate, attempted to claim the policy proceeds. The defendant informed him that Mrs. Ryder did not have the authority to change the beneficiary because she was not the owner. The defendant abandoned that position prior to the original trial in front of Judge DeMayo. In June of 1992, the defendant rejected CT Page 4095-II Mr. Engleman's claim for the proceeds. At that time plaintiff's counsel demanded that the defendant either pay the proceeds to the estate or initiate interpleading action. The defendant refused both proposals and clearly stated its position that Mrs. Ryder's 1979 letter was invalid because it was not on a "company provided form." In response to this, the plaintiff asked the defendant to pay him the proceeds, interplead the funds, or hold the fund until a resolution could be reached. After holding the fund for a period of time, the defendant paid the proceeds to Philip Zink.
The court finds that Mrs. Ryder, through the letter written by Attorney Engleman, made clear to the company her intention to change the beneficiary on her policy. The court further finds that there is no evidence from which a conclusion can be drawn that Mrs. Ryder ever changed this intention. It is clear that Mrs. Ryder never requested the change of beneficiary on a company approved form as required by the terms of her policy
Discussion
The starting point for a decision of the instant case would appear to be the Supreme Court opinion in Aetna Life Casualtyv. Hartford National Bank and Trust Company, 146 Conn. 537
(1959). In that case the policy stated:
 The beneficiary may be changed as often as desired by filing a written request therefore at the home office of the company accompanied by the policy for endorsement and such change shall take effect . . .
The insured wrote a letter to the plaintiff company requesting "effective immediately" a change of beneficiary. The letter was given to one of the plaintiff's agents together with the policy. Several weeks later the agent received a form prepared by the home office. The agent told the insured it would be necessary for her to sign the form to change the beneficiary. After discussion with the agent, the insured decided that she did not want to change the beneficiary.
Faced with this fact pattern, the Supreme Court held:
 As a general rule, a change of beneficiary of an insurance policy can be effected only by following the procedures prescribed by the policy. [citations omitted]. There is a well CT Page 4095-JJ recognized exception to his rule, that a change of beneficiary is effective when the insured has done all in his power to comply with the procedures set out in the policy but has failed because of circumstances beyond his control [citations omitted]." In Podzunas v. Prudential Insurance Company, 125 Conn. 581, 586, 7 A.2d 657, which dealt with the analogous question of assignments, we recognize that there might exist equitable considerations of a character such that they, rather than technical legal principles, should prevail." Aetna Life Insurance, at 541.
The court went on to state:
 Proof of intention alone is not sufficient, but where the intention is manifest and substantial affirmative action has been taken by the insured to effectuate a change of beneficiary the courts generally will make the change effective even though there has not been a strict compliance with the terms of the contract. Franck v. Equitable Life Insurance Company, 203 F.2d 473, 477 (8th Cir. 1953) [Other citations omitted].
While Aetna Life Insurance Company appears to be the leading and most recent case in Connecticut on the question of the requirement of complying with formalities to change beneficiary, the court notes that the entire discussion of compliance with formality is dicta in the Aetna decision. When one examines theAetna decision, one finds that the court concluded that the decedent, Mable E. Bollerer, received the appropriate forms from the company, submitted the policy to the company, but never submitted the company's form because she changed her intention. Mrs. Bollerer's failure to effectively change beneficiaries was not because of any formal defect in her action but because of a change of intention found by the court. Nevertheless, the Supreme Court held that generally policy formalities must be complied with unless the failure is "because of some circumstance beyond his control."
Aetna Life Casualty Insurance primarily relies on two Connecticut cases and a Federal Court of Appeals case interpreting Iowa law to arrive at its conclusion. The cases which lead to the Aetna result are Bachrack v. Herrup, 128 Conn. 74
(1941), Podzunas v. Prudential Insurance Company, 125 Conn. 581
(1939), and Franck v. Equitable Life Insurance Co., 203 F.2d 473
(8th Cir. 1953). CT Page 4095-KK
In Bachrack the insured wanted to change beneficiaries of the policy. The policy required the insured to surrender the policy for endorsement as a condition of beneficiary change. TheBachrack insured could not surrender the policy because it was in the, custody of the old beneficiary who would not give it up. The insured used a company form to change beneficiaries and paid the premium for an extended period of time following the change of beneficiary. The court found that the insured has the choice of allowing the policy to lapse or of paying the premium herself while her estranged husband was the named beneficiary and the custodian of the policy. Under these circumstances the court held:
 After the separation, Mr. Herrup gave his wife two alternatives. She could either allow the policy to lapse or she could continue to pay the premiums with him as beneficiary, however much she might desire to exercise her reserved right to make a change. The mere statement of these facts shows the position of Clara Dull is untenable. All of the equities are on the side of the wife [citations omitted]. The change of beneficiary was effective. Bachrack at 77.
In Podzunas v. Prudential Insurance Co., 125 Conn. 581
(1939), the insured has received monies from his first cousin whom he referred to as his "sister". In exchange, he attempted to assign certain life insurance proceeds to his "sister". The policies contained no specific provision against or procedure for an assignment. The court held:
 If the writing be read in the light of the surrounding circumstances, the conduct of the parties, and particularly the finding of the trial court as to their intention, there can be no doubt that an assignment and not a change of beneficiary was intended, and the terms of the writing are sufficient to constitute such an assignment. Podzunas, at 585.
The court continued:
 Equity, regarding that is done which ought to be done, will give effect to the transaction as an equitable assignment of the policy, good against the administrator. Podzunas, at 586.
Perhaps the leading case nationwide on the change of beneficiaries without full compliance with formalities is FranckCT Page 4095-LLv. Equitable Life Insurance Company, 203 F.2d 473 (8th Cir. 1953). In Franck the trial court found the clearly stated intention to revoke a beneficiary, the naming of a new beneficiary, and the naming of a contingent beneficiary by letter signed by the insured. The federal court was applying Iowa substantive law. The court found:
 In other words, proof of clear intent, plus written notice to the insuror prior to death appears to be enough, under Iowa law, to effect the desired change, where failure to meet all requirements is excusable. Franck, page 476-77.
In Franck the insured had sent a letter requesting a change of beneficiary. The insured then executed a power of attorney in favor of her attorney at law. The attorney at law and the insured appeared to know that the company required the change on the company's form. Initially the attorney at law requested the forms intending to execute them using the power of attorney. The company maintained that the change of beneficiary forms must be signed personally by the insured and not by use of the power of attorney. The evidence showed that the company prepared the forms but they were never executed. It did appear that the policy was available to be surrendered to the company in accordance with the policy terms, but that such surrender of the policy did not take place.
In the instant case this court questions whether the Connecticut requirement that "the insured has done all in his power to comply with the procedure set out in the policy but has failed because of circumstances beyond his control" is the equivalent of the Iowa law which excuses formalistic failure "where failure to meet all requirements is excusable." It is clear that Bachrack was a failure to surrender a nonavailable policy. There is considerable out-of-state authority justifying such a failure Podzunas deals with an assignment of proceeds rather than a change of beneficiary. While Podzunas appears to go a considerable distance in applying equitable principles, the court was applying those principles between the parties and the case was effectively an interpleader where the outcome was essentially immaterial to the insurance company. Franck was a federal interpleader action where again the contest was between the claimants and the outcome was immaterial to the insurance company.
In the case before the court, it is unclear why Connecticut CT Page 4095-MM General chose to pay Philip Zink rather than follow the interpleader procedure. The defendant conceeded at the time that it paid Zink at its peril and the payment is not claimed as a defense to this claim. Connecticut General argued at the trial that its position was that formal compliance with policy provisions was important to it because clerks were processing changes of beneficiary. In order to protect against errors, the company wished the changes to come on forms approved by the company. While the court recognizes the availability, and perhaps even the wisdom of using the interpleader statute, the court knows of no authority which requires Connecticut General to file an interpleader action. Neither can the court find authority which would excuse Mrs. Ryder from having attributed to her the knowledge that was available to her agent Mr. Engleman. This is particularly true since she chose to have Mr. Engleman contact the company on her behalf.
Under all the facts and circumstances of the case, the court finds that the insured, Mrs. Ryder, failed to do all in her power to comply with the procedures set in the policy and that this failure was not occasioned by circumstances beyond her control.
The court finds that the defendant was entitled to rely on its policy provisions. Having found that the defendant was entitled to pay Mr. Zink, the court finds as a matter of law that the defendant did not violate either CUIPA or CUTPA. The plaintiff failed to demonstrate that his alleged damages would not have been avoidable by action on the part of Mrs. Ryder or himself.
The defendant has asserted the defense of the statute of limitations on the plaintiff's breach of contract claim. The statute of limitations for breach of contract is six years, §52-576(a) of the Connecticut General Statutes. The defendant argues that if there was a breach of contract, it occurred in 1979 when the defendant refused to change beneficiaries. The court finds, from the testimony of the defendant's own witnesses, that there was no breach in 1979 at the time of the letter from Mrs. Ryder, and that no final decision was made on the request to change until 1992. Accordingly, the court finds that the breach occurred in 1992 and the suit was commenced in 1992.
The court rejects the defendant's defense and finds the statute of limitations is not a bar to the breach of contract claim. CT Page 4095-NN
However, for the above-stated reason, while finding that the defendant's special defense fails, the court further finds that the plaintiff has failed for the reasons stated herein to prove any of its counts, and accordingly judgment is entered for the defendant on all counts.